JOSEPHINE WEISGUTH, Defendant in Error, *vs.* THE SU-PREME TRIBE OF BEN HUR, Plaintiff in Error.

*Opinion filed April 20, 1916.*

1. PRACTICE—*rule as to setting aside order of dismissal after a voluntary non-suit.* Where there is a voluntary non-suit upon motion of the plaintiff, the trial court has no power to set aside the order of dismissal and re-instate the case, unless at the time the non-suit is taken leave is given the plaintiff to move to set it aside.

2. SAME—*when defendant waives error in setting aside order of dismissal.* Error in setting aside an order of dismissal, after a voluntary non-suit on motion of the plaintiff, is waived, where the defendant, after the cause is re-instated, appears and contests the case on its merits in two trials.

3. INSURANCE—*statements not held to be warranties unless the contract admits of no other construction.* Statements in answer to questions in an application for a benefit certificate will not be held to be warranties unless the contract of insurance admits of no other construction.

4. SAME—*when statements as to condition of health and medical attendance are not warranties.* Where the application for a benefit certificate states that the applicant warrants the statements and answers to be full, complete and true and that any untrue or fraudulent answers made shall vitiate the certificate and forfeit all payments thereon, answers by the applicant as to her past ailments and medical attendance will· be held to be representations and not warranties. (*Cont. Life Ins. Co.* v. *Rogers,* 119 Ill. 474, followed.)

5. SAME—*knowledge of society's examiner is the knowledge of society.* If the applicant for a benefit certificate truthfully answers all questions put to her by the physician, who is the society's medical examiner, and the examiner has knowledge of the condition of health, past ailments and medical treatments of the applicant, then the knowledge of the examiner is the knowledge of the society, and the right to recover on the certificate is not defeated because the examiner did not put down correct answers to the questions in the application. (*Provident Life Assurance Society* v. *Cannon,* 201 Ill. 260, approved.)

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. ROBERT H. FLANNIGAN, Judge, presiding. ·

C. E. POPE, for plaintiff in error.

DAN McGLYNN, for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

The defendant in error, Josephine Weisguth, was the beneficiary in a benefit certificate issued by plaintiff in error, the Supreme Tribe of Ben Hur, to Emma Mansfield, a sister of defendant in error, on September 25, 1911. Upon the death of Emma Mansfield, which occurred November 27, 1911, from acute Bright's disease, plaintiff in error refused to pay the amount of the certificate ($1000) to defendant in error, and she thereupon brought suit in the city court of East St. Louis. Upon the first trial of the cause, at the May term, 1913, of the city court, at the close of defendant in error's evidence and to prevent the giving of a peremptory instruction directing the jury to find for plaintiff in error, defendant in error made a motion for a nonsuit, and the suit was dismissed. Thereafter, during that term of court, upon motion of defendant in error, the cause was re-instated and was again tried at the September term, 1913, when a verdict was rendered for defendant in error. A new trial was granted and the case was tried the third time at the March term, 1914, when a verdict was returned for the defendant in error and judgment rendered thereon for $1115.64. This judgment was affirmed by the Appellate Court for the Fourth District, and the record has been brought to this court for further review by a writ of *certiorari*.

The first ground urged for reversal is that the court erred in setting aside the order of dismissal entered upon the motion for voluntary non-suit and in re-instating the cause. The record and the bill of exceptions contain the motion to set aside the order of dismissal and to re-instate the cause. Two grounds were assigned in support of the motion: (1) That the court admitted improper evidence

before the non-suit was taken; and (2) that at the time the motion for non-suit was made defendant in error was not aware of a clause in the by-laws of plaintiff in error requiring the action to be brought on the certificate within one year from the death of the member. In involuntary non-suits the court may, in its discretion, set aside the order of dismissal and re-instate the cause. In case of a voluntary non-suit upon motion of a plaintiff the court has no power to set aside the order of dismissal and re-instate the cause unless at the time the non-suit is taken leave is given the plaintiff to move to set it aside. (*Barnes* v. *Barber*, 1 Gilm. 401; *Lombard* v. *Cheever*, 3 id. 469.) The reason for this rule is apparent. If a plaintiff by his deliberate and voluntary act secures the dismissal of his suit he must be held to have anticipated the effect and necessary results of this action and should not be restored to the position and the rights which he voluntarily abandoned. Having taken a non-suit, his only recourse is to begin his action anew. Plaintiff in error, however, has forfeited its right to complain of this action of the court. After the cause was re-instated it appeared in two trials in the city court and contested the case on the merits. By so doing it conferred upon the court the power to proceed and waived its right to object to the re-instatement of the cause. (*Herrington* v. *McCollum*, 73 Ill. 476; *Grand Pacific Hotel Co.* v. *Pinkerton*, 217 id. 61.) As we said in *Herrington* v. *McCollum, supra:* "The court unquestionably had jurisdiction of the subject matter of litigation, and it has never been questioned that parties may so far control jurisdiction over their own persons, in such a case, as to confer upon the court the right to proceed by voluntarily entering an appearance. The defendants, to avail of the right to question the jurisdiction of the court when the case was re-instated, should either have not appeared at all or limited their appearance to the objection against the jurisdiction of the court."

The sole defense made in the trial court was that the answers of the deceased to the questions propounded by the medical examiner on her application for the benefit certificate, which application was expressly made a part of the contract, were warranties, and that certain of such answers were untrue. The application was, in part, as follows: "I do hereby agree and warrant as follows: (1) That the statements and answers contained in this application and medical examination are full, complete and true and were read by me before attaching my signature hereto, and I hereby agree that these statements and warranties, together with those hereinafter made to the examining physician in this application, and the laws, rules and regulations of the Supreme Tribe of Ben Hur now in force and which may be hereafter adopted, shall form the basis of this contract for beneficial membership; * * * (3) that any untrue or fraudulent answers made by me in this application * * * shall vitiate my beneficial certificate and forfeit all payments made thereon." By the terms of the certificate plaintiff in error agreed to pay the beneficiary the sum of $1000 on the death of the member prior to her sixtieth birthday, "provided that said application for membership and said medical examination are absolutely and strictly true as written."

The questions which it is claimed were falsely answered, together with the answers thereto, are as follows:

"Have you had or been afflicted since childhood with any of the following complaints, diseases or symptoms: * * *

"Dropsy?—No. * * *

"Palpitation of the heart?—No. * * *

"Swelling of feet, hands, glands or eyelids?—No. * * *

"If any of the above diseases have occurred, state full particulars, giving dates, severity, duration, nature, number of attacks and whether you have fully recovered. . . . . . . .

"How long since you consulted or were attended by a physician?—Five years.

"State name and address of such physician.—Dr. Fair-brother, East St. Louis, Illinois.  *  *  *

"Have you had any severe illness or injury not mentioned above?—No."

The uncontradicted proof on the trial disclosed that during the five years next preceding the making of the application Mrs. Mansfield had been treated by two physicians besides Dr. Fairbrother.  One of these physicians testified that he found Mrs. Mansfield suffering from a tumor of the womb and a fatty heart; that from her waist down she had a dropsical condition of the hips and legs; that to relieve the excessive distention of the legs he "tapped" them; that the cause of the dropsical condition was a general breaking down of the whole system; that if she had Bright's disease at that time he did not know it.  He treated her about ten days in June, 1910, during which time she was in a hospital.  The other physician testified that he had treated her in 1909 for liver trouble; that in July, 1910, he treated her for weakness of the cardiac muscles and failing circulation; that at that time the blood and other fluids had accumulated in the lower parts of her body, producing œdema, or, as it is ordinarily called, dropsy.  This treatment extended over a period of about fifteen days.  It is conceded by defendant in error that this was the condition of Mrs. Mansfield at the time testified to by these two physicians.

Defendant in error and a daughter of Mrs. Mansfield testified on the trial that the medical examiner for plaintiff in error who examined Mrs. Mansfield filled in the answers to the interrogatories above set out; that at the time of this examination Mrs. Mansfield disclosed to the medical examiner all the facts testified to by these two physicians and told him fully as to her condition at these times and of the treatment she had received, and that with this information the medical examiner wrote down the responses contained in the application for membership.  The medical ex-

aminer, called as a witness by plaintiff in error, denied that he had been given this information and denied that the daughter of Mrs. Mansfield was present at the time the examination was made. The jury found against plaintiff in error on the facts and the court rendered judgment upon the verdict. This judgment having been affirmed by the Appellate Court, all questions of fact have been conclusively settled, and we are not permitted to weigh the evidence or to question the finding of the trial or Appellate Court as to the facts.

It is insisted, as a matter of law, that the answers of the deceased to the questions propounded by the medical examiner were warranties and not mere representations, and therefore, some of them having been found untrue, defendant in error is not entitled to recover. It is only in cases where the policy will admit of no other construction that a statement contained therein will be construed as a warranty. "The doctrine of warranty, in the law of insurance, is one of great rigor and frequently operates very harshly upon the assured, and courts will never construe a statement as a warranty unless the language of the policy is so clear as to preclude any other construction." *Spence* v. *Central Accident Ins. Co.* 236 Ill. 444.

Under the holding in *Continental Life Ins. Co.* v. *Rogers,* 119 Ill. 474, the statements made in this application must be held to be representations and not warranties. In that case the policy provided that the answers, statements and declarations contained in or indorsed upon the application, which was made a part of the contract, were warranted by the assured to be true in all respects, and that if the policy was obtained by or through any fraud, misrepresentation or concealment it should be absolutely null and void. In passing upon the question whether that constituted a warranty or a mere representation we said: "It is clear, the fraud, concealment and misrepresentation here contemplated can have no application to anything other than the

answers to the questions in the application. If true and full answers there could be neither fraud, concealment nor misrepresentation, and if not full and true, upon the hypothesis they were warranties, the assured would incur a forfeiture of the policy whether there was any intentional misrepresentation or suppression of the truth or not. If the answers, however, are simply representations, as contradistinguished from warranties, in the technical sense of those terms, then such of the answers, not material to the risk, as were honestly made in the belief they were true would not be binding upon the assured or present any obstacle to a recovery. It is clear, therefore, the only way in which to give that provision of the policy relating to fraud, concealment and misrepresentation any effect at all, is by treating the answers in the policy as mere representations and not warranties."

The *Rogers case* cited and relied upon *Fitch v. American Popular Life Ins. Co.* 59 N. Y. 557. In that case the policy provided that fraud or intentional misrepresentation vitiated the policy, and that the statements and declarations made in the application, and on the faith of which the policy was issued, were warranties and in all respects true, and that the applicant declared that the answers to the questions annexed, and the written statements in the statement, declaration or warranty, together with the statements made to the examining physician, were warranties correct and true, and that the policy was issued and accepted in entire, unconditional honesty and good faith and with the just intent of scrupulously fulfilling all the conditions and engagements of the contract. It was held that the answers and statements contained in the application were mere representations and not warranties, mainly upon the same ground as the basis of the holding in the *Rogers case, supra*.

The provisions of the policy in this case are so similar to those in the *Rogers case, supra,* as to make them, in effect, identical. Here the provision is that the statements

made and the answers given are warranties and that any untrue or fraudulent answers made shall vitiate the certificate and forfeit all payments made thereon. It can be said here, as in the *Rogers case, supra,* that if the answers are true and full there could not be any fraud, and if they are not full and true, upon the hypothesis that they are warranties, the assured would incur a forfeiture of the policy whether there was any fraud or intentional suppression of the truth or not, and it is just as evident in this case as in the *Rogers case, supra,* that the only way in which to give that provision of the policy relating to fraud any effect is by treating the answers as mere representations and not warranties.

There is another reason why the plaintiff in error can not rely upon these answers as warranties in order to defeat recovery upon the certificate. As has been stated, defendant in error did not attempt to contradict the proof made by plaintiff in error on the trial as to the condition of Mrs. Mansfield immediately prior to the time she made her application for membership. The whole controversy centered upon the question whether the information as to her true condition had been given to the medical examiner, and, if so, what effect it had on the right to recover. The court gave but two instructions on behalf of defendant in error. The first informed the jury that if they believed, from the evidence, that at the time the application for the policy in question was filled out by the medical examiner he was the medical examiner for the defendant, then any information obtained by such medical examiner, during the time of his examination, as to the condition of health of the insured previous to her decease, or former medical treatment, would be the knowledge of the defendant. The second instruction told them that if they believed, from the evidence, that the insured, at the time of the medical examination, truthfully answered all questions put to her, and if they further believed that the medical examiner was the

medical examiner for the defendant, and that in making the examination he had notice and knowledge of the different ailments with which the insured had been afflicted and knew the names of the physicians who had waited on her, such knowledge would be notice to the defendant itself. The answers complained of were material to the risk, and, considered either as warranties or as representations, if made by Mrs. Mansfield to the medical examiner, the beneficiary could not recover upon the certificate. The jury, therefore, in order to arrive at a verdict in favor of the beneficiary necessarily found that the deceased did impart to the medical examiner full information as to her true condition, and this finding has been finally approved by the judgment of the Appellate Court.

In passing upon a similar question in *Provident Life Assurance Society* v. *Cannon*, 201 Ill. 260, we said: "Notice to the agent, at the time of the application for the insurance, of facts material to the risk is notice to the insurer, and will prevent it from insisting upon a forfeiture for causes within the knowledge of the agent. (*Phenix Ins. Co.* v. *Hart*, 149 Ill. 513; *Home Ins. Co.* v. *Mendenhall*, 164 id. 458.) Where the assured discloses facts to the agent and the agent undertakes to fill out the application, and instead of stating the facts as they are disclosed to him inserts in lieu thereof conclusions of his own, the insurance company will not be permitted to insist that the words of the agent, and not of the assured, are warranties, rendering the policy void.—*Phenix Ins. Co.* v. *Stocks*, 149 Ill. 319; *Royal Neighbors of America* v. *Boman*, 177 id. 27; *Teutonia Life Ins. Co.* v. *Beck*, 74 id. 165."

In *Johnson* v. *Royal Neighbors*, 253 Ill. 570, this same question arose, and we there held that if the applicant for membership in a benefit society gives true answers to the questions in the application but the agent of the society writes false answers, the society waives its right to object to the validity of the benefit certificate on the ground that

the answers were warranties.   The medical examiner was clearly the agent of plaintiff in error, and if he wrote false answers to the questions contained in the application for membership, as the jury by the verdict necessarily found he did, plaintiff in error thereby waived its right to object to the validity of the certificate on the ground that the answers of the deceased were warranties.

It is contended that even upon the theory the answers in the application are representations and not warranties defendant in error should not recover, as it is conceded that the deceased had been afflicted with dropsy shortly prior to the making of the application, whereas the answer in the application states that she had never been afflicted with that disease.   Mrs. Mansfield's attending physician testified that he had never told her she was suffering from dropsy, which may account for the fact that she did not use that term or admit that she had suffered from that disease in her interview with the medical examiner, if her answer to that specific question is correctly recorded..   The physicians who testified in behalf of plaintiff in error described the symptoms of dropsy, and the two witnesses for defendant in error testified that Mrs. Mansfield told the medical examiner that she suffered from all the ailments testified to on the trial by her two physicians, describing the symptoms of dropsy as testified to by physicians on the trial, and that she told him of the treatment she had received, including the "tapping" of her legs to remove the secretions.   This was sufficient information to a medical man to advise him that she had suffered from dropsy, and he should have so recorded her answer.

It is contended that the court erred in giving the two instructions above noted at the request of defendant in error.   The objection to them is, that they should have negatived any collusion between the deceased and the medical examiner.   The instructions, as given, correctly stated the law.   There was no contention made on the trial that there

was any collusion between the deceased and the medical examiner, but, on the contrary, the medical examiner on the witness stand directly contradicted the two witnesses on behalf of defendant in error as to the information given him by the deceased at the time the examination was made. The court did not err in giving these instructions.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*