## Mary Louise Mann, Appellee, v. Supreme Council of Royal Arcanum, Appellant.

1. INSURANCE, § 120*—*what construction placed on questions and answers in application.* In determining the construction to be given to certain questions and answers contained in the application for life insurance of the insured, *held* that the language would be strictly construed against the insurer and liberally in favor of the insured, in an action to recover on the policy.

2. INSURANCE, § 208*—*when whole of statements in contract considered in determining whether warranties or representations.* Where there are statements in a contract of life insurance, some of which appear upon their face to be warranties and others representations, effect must be given in the construction of such contract to the whole of the statements in determining whether or not they are intended as warranties or as representations.

3. INSURANCE, § 208*—*when statement in life policy construed as warranty.* Only in cases where a policy of life insurance will admit of no other construction will a statement by the insured contained therein be construed as a warranty.

4. INSURANCE, § 209*—*what is warranty and not representation in application.* A statement by the insured in his application for insurance that he warrants the truthfulness of the statements in his application and consents and agrees that any untrue or fraudulent statements or any concealment of facts therein or to or from the medical examiner shall forfeit the rights of himself or his beneficiaries, heirs and all other persons under his policy, *held* to be a representation and not a warranty as to such statements in the application or to the medical examiner.

5. INSURANCE, § 663*—*when evidence is insufficient to show fraud in application.* Evidence *held* to show that the insured was not guilty of any fraud or misrepresentation in making the statements contained in his application for life insurance.

Appeal from the City Court of East St. Louis; the Hon. WILLIAM M. VANDEVENTER, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed April 13, 1917.

F. H. BACON and KRAMER, KRAMER & CAMPBELL, for appellant.

DAN McGLYNN, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

The appellee recovered a judgment in the court below for $1,050 and costs, which judgment the appellant seeks by this appeal to reverse.

It appears from the record in this case that on December 28, 1913, Louis Joe Mann made application to appellant for a benefit certificate for the amount of $1,000, in which he named his wife, the appellee, as beneficiary, and the benefit certificate was issued thereon on January 22, 1914. The application made by the deceased contained the following clause: "I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any untrue or fraudulent statements or any concealment of facts therein or to or from the medical examiner or my suspension or expulsion from or voluntarily severing my connection with the order shall forfeit the rights of myself and my beneficiaries, heirs, and all other persons claiming under my benefit certificate issued herein." Accompanying this application was a medical examiner's certificate which contained the following questions and answers: "Q. Has albumen or sugar ever been found in your urine?" "A. No." "Q. Have you ever before applied for membership in the Royal Arcanum?" "A. No." "Q. Or in any other beneficial society or assessment insurance company?" "A. Yes." "Q. Or for life insurance in any Insurance Company?" "A. Yes." "Q. Have you ever been rejected?" "A. No." At the foot of the medical examiner's statement, and just above the signature of the applicant, appears the following: "I hereby warrant the truthfulness of all the answers and statements given to the above questions." An application made by the deceased to the Prudential Insurance Company on about May 7, 1906, contained the following statement, signed by the medical examiner:

"On testing his urine I found it loaded with sugar."
Thereupon the following stipulation was entered into
between the appellant and appellee to wit: "It is
stipulated in this case that Louis Joe Mann, on or
about the 7th day of May, 1906, prior to the time he
made application to the defendant herein for insur-
ance, made application to the Prudential Insurance
Company of America, at its home office located at
Newark, New Jersey, then engaged in the life insur-
ance business, for life insurance in said company;
that said application was rejected by said Prudential
Insurance Company before he made application to the
defendant for the benefit certificate sued upon in this
case, but that the fact of said rejection was not made
known to said applicant and he had no knowledge of
said rejection at the time he made his said application
to the defendant, or at any time thereafter during his
lifetime." Doctor Carr, who made the examination
for the Prudential Insurance Company, testified that
the Prudential Insurance Company never gave the ap-
plicant any knowledge of the analysis made of his
urine, and neither did Doctor Carr make known to him
the result of the application. He also testified that he
made an analysis of the urine and that it contained
sugar; also that if that condition existed in a man and
some nine years afterwards he died of grippe infec-
tion, that the condition as to his urine would not con-
tribute to the death. He further testified that sugar
in the urine indicates diabetes and that a man having
that trouble is never recommended for insurance. The
statement of Doctor Carr to the Prudential Insurance
Company made on May 2, 1906, contains the following
statement: "This young man appears to be in good
health, looks well, is actively engaged at the stock
yards handling cattle, etc., and I believe he thinks him-
self in perfect health, but in testing his urine I found
it loaded with sugar. The second and third samples

showed less than the first, but still quite full. I enclose two reports of chemists. I suggest you P. P. the case for a few weeks. Carr.'' It was explained by Doctor Carr that the letters P. P. meant that he recommended that the application be postponed; that he might withdraw the application for a few weeks or few months so that he might apply again, ''and that is how I passed his application after I had made the examination.'' It further appears from the evidence that the application certificate and statements certified to by the medical examiner were filed in the secretary's office and made a part of the contract.

Upon the trial of this case, appropriate pleas and replications were filed and propositions of law and fact submitted to the trial court, presenting the question as to whether or not the foregoing statement of the deceased in his application, and statements made to the medical examiner, were warranties or mere representations, and the trial court found that they were representations and rendered judgment upon the certificate.

The appellant in its brief says: ''The only question to be determined in this case is whether or not the statements contained in the application and answers to the questions propounded by the medical examiner are warranties or mere representations.'' And this was the sole question argued by counsel for appellant and appellee herein. It is insisted by counsel for appellant that the statements contained in the application and medical examiner's certificate were as a matter of law warranties, and that as it has been shown that the deceased had been at one time examined for insurance in the Prudential Insurance Company and not accepted, that his answer to the question, if he had ever made application to any other insurance company and been rejected, was false; also his answer to the question, has albumen or sugar ever been found in his

urine, and which he answered "no," was false, and that as a matter of law these questions and answers were warranties and rendered the policy void. In determining the construction to be given to these statements, it must be borne in mind that the language will be strictly construed against the insurer and liberally in favor of the insured; and further, that where there are statements in a contract, some of which appear upon their face to be warranties, and others representations, that in the construction of this contract effect must be given to the whole of the statements in determining whether or not they are intended as warranties or representations, and only in cases where the policy will admit of no other construction that the statement contained therein will be construed as a warranty. "The doctrine of warranty, in the law of insurance, is one of great rigor and frequently operates very harshly upon the assured, and courts will never construe a statement as a warranty unless the language of the policy is so clear as to preclude any other construction." *Spence v. Central Acc. Ins. Co.*, 236 Ill. 444. The Supreme Court, in passing upon clauses in a policy similar to the one under consideration, says: "It is clear, therefore, the only way in which to give that provision of the policy relating to fraud, concealment and misrepresentation, any effect at all, is by treating the answers in the policy as mere representations, and not warranties." *Continental Life Ins. Co. v. Rogers*, 119 Ill. 474. The Supreme Court, in the case of *Weisguth v. Supreme Tribe of Ben Hur*, 272 Ill. 541, says: "The *Rogers* case cited and relied upon *Fitch v. American Popular Life Ins. Co.*, 59 N. Y. 557. In that case the policy provided that fraud or intentional misrepresentation vitiated the policy, and that the statements and declarations made in the application, and on the faith of which the policy was issued, were warranties and in all respects true, and that the

applicant declared that the answers to the questions annexed, and the written statements in the statement, declaration or warranty, together with the statements made to the examining physician, were warranties correct and true, and that the policy was issued and accepted in entire, unconditional honesty and good faith and with the just intent of scrupulously fulfilling all the conditions and engagements of the contract. It was held that the answers and statements contained in the application were mere representations and not warranties, mainly upon the same ground as the basis of the holding in the *Rogers* case, *supra.*"

The statement contained in the application warranting the truthfulness thereof and, providing that any untrue or fraudulent statements therein made, or made to the medical examiner, shall work a forfeiture of the rights of the beneficiaries in the certificate, can in our judgment be given no other effect than that of representations, and the statements in the medical examiner's certificate must be read in connection with and as a part of the application, and when all taken together provides that if any of the statements are false that it works a forfeiture. If they were intended to be taken as warranties, there was no occasion for inserting the fact that fraudulent or false answers would work a forfeiture. The statements contained in this contract are similar to the statements in the case of *Continental Life Ins. Co. v. Rogers, supra,* and to the statements contained in the case of *Weisguth v. Supreme Tribe of Ben Hur, supra,* and these cases are, in our judgment, decisive of the case now under consideration.

Many cases have been referred to by counsel for appellant in which similar clauses have been held to be warranties, but the cases most strongly adhering to the doctrine of making such statements warranties are of other jurisdictions and have not been followed by

the Supreme and other courts of this State. It is clear that where a statement is shown to be a warranty and nothing in connection with it showing an intention upon the part of the contracting parties that a forfeiture should be had, if such statements were false then we would agree with counsel that the rule of warranties should be followed, but in a case like the one under consideration, where it necessarily follows from the language used that before such statements can work a forfeiture of the policy that they must be fraudulent, then in our judgment they can only constitute representations. It clearly appears from the evidence and stipulations in this case that the deceased did not know that he had been rejected or that his urine contained albumen, and that he was not guilty of any fraud or misrepresentation in the making of the statements.

We believe that the statements contained in this contract were representations and not warranties, and that the lower court was right in so holding, and the judgment of the lower court is affirmed.

*Judgment affirmed.*