## Martin Flenner and Tolbert Flenner, trading as M. Flenner & Sons, Appellees, v. Capital Live Stock Insurance Company, Appellant.

1. INSURANCE, § 122*—*when application is not part of contract.* The recital of an insurance policy that it is issued "in consideration of the stipulation herein named and of the warranties made in the application for this insurance and of the further consideration of $180 premium," does not make the application a part of the policy.

2. INSURANCE, § 209*—*when statements in application are warranties.* An application for insurance is not a part of the policy so as to render the statements therein warranties, unless the language of the policy itself so clearly makes the application a part thereof as to preclude any other reasonable construction.

3. INSURANCE, § 209*—*what statements in application are mere representations.* Statements contained in an application for insurance which are not a part of the policy are not warranties but mere representations.

4. INSURANCE, § 209*—*when statements in application are representations.* When an agent fills out an application for insurance without inquiry, merely presenting the application to the insured for his signature, the answers to the questions in the application are not warranties.

5. APPEAL AND ERROR, § 1414*—*when finding as to death of animals insured is conclusive.* In an action to recover on a live stock insurance policy in which the evidence as to the cause of the animal's death and the time when it became sick was conflicting, *held,* that a finding that it did not die of a disease contracted before the policy was delivered would not be disturbed.

6. INSURANCE, § 128*—*what is effect of provision as to notice of sickness of live stock.* That an animal was constipated the night before he died is not notice to the owner that the animal was sick, within the meaning of the provision of a live stock insurance policy requiring insured to give the insurer notice in case of the sickness of the animal and to immediately secure the services of a veterinary.

Appeal from the Circuit Court of Coles county; the Hon. JOHN H. MARSHALL, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 27, 1920.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Thomas J. Graydon, Edward C. Craig, Donald B. Craig and Fred H. Kelly, for appellant.

A. C. and Ben F. Anderson, for appellees.

Mr. Justice Eldredge delivered the opinion of the court.

Appellees sued appellant in an action of assumpsit upon a policy insuring a hog of appellees for the sum of $1,500, and obtained a verdict and judgment in the court below for $1,205. The declaration consists of one special count based upon the policy and the common counts. Appellant filed a plea of the general issue to all the counts, which is designated as the first plea.

The second plea avers a violation of a condition of the policy as follows: "This policy shall not cover loss by death from disease contracted or injury which occurred, prior to its delivery to the insured and the payment of the premium."

The third plea avers a violation of the following condition: "In case of sickness or injury of any animal covered by this policy, the insured shall give notice thereof by telegram to Gaius W. Hubbard, 175 W. Jackson Blvd., Chicago, Illinois, and the company shall not be liable for loss by death if the insured fails to give such notice."

The fourth plea avers that in said policy it is provided that it is insured in consideration of the warranties contained in the application; that among such warranties it was by plaintiff warranted that at the date of said application the insured animal was then and there in excellent bodily condition, which warranty was false, in that said animal at such time was suffering from swine plague or other serious diseases.

The fifth plea avers a false warranty in the application in that said insured animal had never been sick or afflicted with any disease or injury at any time.

The additional plea avers that it is provided in said policy that it shall not cover loss by death if, during the term of said insurance, the animal shall become sick or injured and the insured shall fail to immediately secure a licensed veterinarian to attend the same; that said insured animal had been sick 12 days before its death and that appellees did not immediately secure a licensed veterinarian to attend to said animal.

The issues tendered by the fourth and fifth pleas may be eliminated for two reasons: First, the policy recites that it was issued, "In consideration of the stipulation herein named and of the warranties made in the application for this insurance, and of the further consideration of $180.00 premium." This recital of the consideration for the policy does not make the application a part of the policy. An application for insurance is not a part of the policy so as to render the statements therein warranties, unless the language of the policy itself so clearly makes the application a part thereof as to preclude any other reasonable construction. *Spence v. Central Accident Ins. Co.*, 236 Ill. 444. The statements made in the application therefore were not warranties but mere representations. Second, the hog in question had been previously insured by appellant and when the policy was about to expire appellant's agent took a new application to Tolbert Flenner, one of the appellees, to have him sign it for a new policy. When the agent arrived at Flenner's farm he found that the latter was busy and he told Flenner that the questions were about the same as those in the old application and then filled in the answers to the questions himself. He did not read the questions to Flenner nor did Flenner read them. He wrote the answers in the new application from his memory of the answers in the other application and then handed it to Flenner who signed it. When an agent fills out an application for

insurance without inquiry, merely presenting the application to the insured for his signature, the answers to the questions in the application will not be warranties. *Hartford Life & Annuity Ins. Co. v. Gray,* 80 Ill. 28; *Johnson v. Royal Neighbors of America,* 253 Ill. 570; *Andes Ins. Co. v. Fish,* 71 Ill. 620; *Weisguth v. Supreme Tribe Ben Hur,* 272 Ill. 541. In the case of *Royal Neighbors of America v. Bowman,* 177 Ill. 27, the court quotes the following with approval: "It is notorious that contracts of insurance are, on the part of the assured, entered into without the advice of counsel, and chiefly upon the representations of the agents of the insurer. Such agent is justly looked upon as the accredited agent of the company, in whom it has confidence and holds out as worthy of the confidence of its patrons. Furthermore, the assumption is perfectly natural that he knows just what information his principal desires and in what language it may be best expressed, and human nature must be far different from what it is now before the average applicant for insurance can be taught that he must be deaf to the representations of the agent while he sharpens his comprehension and applies it to the careful scrutiny of the insurance stationery, which, even without the suggestion of the agent, it is impossible for him to regard as other than a mere 'matter of form.' " The court then holds: "it was his (agent's) duty to ascertain the actual facts about this risk, and his report to the company must, where no fraud or intent to deceive on the part of the applicant is shown, be conclusive upon it."

In the fore part of October, 1918, this hog was exhibited at a swine show held at Cedar Rapids, Iowa. It returned from this show on the 10th or 11th of October. On October 14, the application for the policy was signed by appellees and the policy was issued October 16. The hog died on the morning of October 29. The second plea presents the issue whether the

hog died from a disease contracted prior to the delivery of the policy to appellees. There is no direct evidence that the hog was actually sick prior to the delivery of the policy. To sustain this plea appellant introduced proofs to show that the hog was vaccinated at Cedar Rapids and also again after its return, but the proofs also show that it was customary to treat all hogs in this manner when they were used for exhibition purposes at stock shows. Two officers of appellant testified also that one of the appellees admitted to them, after the hog had died, that it had been sick at Cedar Rapids. This admission is denied and the question of the veracity of the witnesses on this point was for the jury to determine. Five veterinary surgeons gave their expert opinions as to the cause of the hog's death. Two of these held a post-mortem on the body of the hog but no two of them agreed as to what disease caused the hog's death. One of the experts who made the post-mortem examination testified that in his opinion the hog died of swine plague, of which he had probably been sick two or three days but that he also thought the hog had been afflicted with anemia and that the anemia might have extended over several months but that it would not affect the animal to any great extent and that the owner might not notice anything but a slight attack of constipation. Another expert testified that the hog probably died as a sequel of some infectious disease, such as hog cholera, swine plague, shipping fever or hemorrhagic septicemia, and that it probably took a month or more to develop the conditions found on the post-mortem examination. Another expert testified that he did not think from the conditions shown by the post-mortem examinations that the hog had had anemia but his conclusion was that it died from fatty degeneration of the liver and from a sequel of an infectious disease, and he thinks the hog must have shown visible symptoms of illness for 2 or 3 days, or

that the diseased condition must have existed for a month or more. Another expert testified that in his opinion the hog died from atrophy of the heart which disease might have existed for an hour or for five minutes. The other veterinary surgeon who assisted the first-mentioned expert in making the post-mortem examination testified that he had come to the conclusion that the hog had died of swine plague and that it had not been sick for over 48 hours. The post-mortem was held at night by the aid of the lamps of an automobile and two or three lanterns. It is claimed that the above testimony proves conclusively that this hog had been afflicted with some kind of a disease when the policy was delivered. The judgment of the jury upon this mass of conflicting conjectures will not be disturbed.

It is also contended that the proofs sustain the third plea. These proofs are as follows: When one of the appellees took the hog out into the yard to exercise it the night before its death he noticed that it did not have a movement of the bowels, which was customary at such times, and that he went to a veterinary surgeon to procure a cathartic but which he did not administer to the hog that night. The next morning when he took the hog out to exercise it in the yard it ran around the yard for about 30 minutes when it laid down by the fence and died. It is conceded that if appellees had no notice that the hog was sick until it was turned out in the yard that morning, then they were excused from sending immediate notice of its illness on the ground of insufficient time to do so before the hog died, but it is urged that appellees knew he was sick the night before when they discovered that it was constipated. We know of no authority which holds that an occasional constipation of an animal is a sickness within the contemplation of an insurance policy.

The proofs in this record also fail to sustain the

additional plea.   There was no reversible error in the giving or refusing of the instructions.

The judgment of the circuit court is affirmed.

*Affirmed.*