Becky Colky, Appellee, v. Metropolitan Life Insurance Company, Appellant.

Gen. No. 42,024.

Opinion filed June 30, 1943.

Hoyne, O'Connor & Rubinkam, of Chicago, for appellant; Nathaniel Rubinkam and John C. Melaniphy, both of Chicago, of counsel.

Seltzer, Levy & Spiegel, of Chicago, for appellee, S. B. Rosenzweig, of Chicago, of counsel.

On Rehearing.

Mr. Justice Kiley delivered the opinion of the court.

This is an action by a beneficiary upon two industrial insurance policies each for $250.00, with verdict and judgment in plaintiff's favor for $500.00. Defendant has appealed.

The verdict of the jury was:

"We the jury, find for plaintiff with $500.00 damages, plus insurance."

On motion of the plaintiff the court corrected the verdict to read: "Five Hundred Dollars ($500.00)." Judgment was entered for that sum. The defendant concedes the court has the right to amend the verdict where the intention of the jury is clear, but says that "the verdict here indicates the jury did not understand the issues as presented by the instructions." As will appear from a discussion of the instructions hereinafter, we believe that there is no relation between the instructions and the surplusage in the verdict and there is no merit to defendant's contention.

The first policy issued July 4, 1938 upon medical examination and the second August 29, 1938 without. Each policy provides that terms cannot be waived by any agent and that the policy is voidable if the insured within 2 years prior to the issuance has had institutional treatment or been attended by a physician, unless such treatment is shown to be not for serious disease, except where reference to the treatment is endorsed on the policy. Plaintiff admits insured's hospitalization and treatment for serious illness, but there was no endorsement thereof on the policies and the issue is whether the pertinent provisions of the policies were waived by defendant's agent.

Premiums were paid until the insured died. He was 45 years of age. On July 14, 1936, he was admitted to Mt. Sinai Hospital, where he remained until July 20, 1936 and on December 3, 1936, was admitted to the Jewish Peoples Convalescent Home, where his serious illness was diagnosed as arteriosclerotic heart disease. He was treated in the latter institution until February 5, 1937, when he was found to have a coronary disease. He was admitted again to Mt. Sinai Hospital for a few days in the summer of 1938, just before the

first policy issued, and he died suddenly of heart disease on January 27, 1939.

The applications for policies were dated May 23, 1938, and August 29, 1938 and both were taken by Mintz, an employee of the defendant. The first application consists of Parts A, B, C and D; "A" covers insured's life and employment history and the beneficiary, and is signed by insured; "B" signed by Mintz, states, among other things, that the insured is in good health, that Mintz had no reason to suspect that insured had within 3 years any illness or disease, and that the amount applied for did not require medical examination, but that the examination had been requested by the insured; "C" signed by insured, states that he had never had a disease of the heart nor any treatment in any hospital within 5 years and that within 3 years his only treatment was for stomach disorder in 1935, with complete recovery; "D" signed and certified by Sam Metcoff, defendant's medical examiner, states, among other things, that in 1935 insured had been ill for a few weeks of a stomach disorder, that in the examiner's opinion the insured was in good health, that insured's heart was not diseased, and that Metcoff personally examined him. The second application, in which there was no medical examination, consisted of Parts A, B, C and D; "A", "B" and "C" are the same in both; "D" differs—it is a "Report of the Field Representative," signed and certified by Mintz, and states that insured was last under the care of a physician in 1934 for a cold for 3 days and fully recovered, and that in the opinion of Mintz, insured is in good health and that Mintz personally inspected insured.

Setting aside for a moment the question of the alleged truth or falsity of statements by the insured, we find in the first application under "C," a statement that insured was treated in 1935 for stomach disorder; and "D" certified by Dr. Metcoff, a confirmation of

that disorder; under "D" second application, certificate by Mintz, that the last treatment by a physician of the insured was in 1934 for a cold lasting three days, no mention is made of the stomach disorder.

Plaintiff says defendant, by Mintz, waived the pertinent policy provisions. Testimony on plaintiff's behalf is that neither plaintiff nor insured could read or write English; that Mintz had been calling at the Colky's for 3 years; that Mintz prior to the first application was informed of insured's treatment and condition and had offered to recommend a heart doctor; that Mintz had asked no questions with reference to insured's physical condition or prior treatment or hospitalization; that Mintz wrote the answers in both policies except those certified by the medical examiner; that the insured only signed the application; and that Mintz informed insured that no examination would be necessary for the second policy because he had passed the first examination; that the only questions asked by the doctor were insured's age and birth place; and that insured was examined in a bedroom. To all of this testimony defendant objected. Defense testimony is that Mintz was a soliciting agent who canvassed for business, wrote applications, collected premiums, delivered policies and aided in completing proof of death. Mintz admitted writing the answers, but says that he simply recorded the answers given by insured to the questions read by Mintz. He denied having any knowledge of insured's sickness, being told of any, and offering to recommend a doctor. Dr. Metcoff testified that he examined the insured for a heart condition, but none was disclosed and that the insured signed the application before taking the medical test. Dr. Metcoff says he has been defendant's medical examiner for about 30 years and that his examinations are more thorough in some cases than in others, depending on the amount of insurance involved. Since the insurance involved in the instant policy was

but $250, we may infer that his examination was not very thorough. It is difficult to understand how he could examine insured and not discover the heart condition when the evidence clearly shows insured's heart was extensively damaged. It appears from the testimony that Mintz had written 8 or 10 policies for Colky's family and that he called each Monday to collect premiums. It would seem natural for him to inquire now and again about the insured's health and to learn of his hospitalization. There is no fair inference deducible against insured's good faith. Mintz testified that only 6 or 7 out of 100 persons request medical examinations and since insured requested one, the inference is that he wanted to be sure his condition would not preclude the insurance.

The issue of waiver was one of fact for the jury, because there was evidence that Mintz knew of insured's illness, unless on all the evidence and inferences tending to prove the facts, it can be said, as a matter of law, that he is not an agent with power to waive and did not waive, in which event the plaintiff should not recover.

If the question is for the jury, we think the issue was fairly presented as a debatable question and the verdict is one which we would not be justified in setting aside. The question, then, we are called upon to decide is whether Mintz, as a matter of law, on the evidence of his duties as an agent, had power to and did waive the pertinent provisions of the policies. There seems to be no dispute that if the question of waiver were not involved, defendant should prevail for it is clear that insured's treatment and hospitalization was for a serious disease. The policy provides that the terms may not be waived by an agent, and the defendant insists the proof shows Mintz had no authority to waive or alter the terms of the policies. We are satisfied that Mintz had knowledge of insured's condition and the history of his illness. Plaintiff contends

that under the evidence and under the ruling in *Mousette v. Monarch Life Ins. Co.*, 309 Ill. App. 224, Mintz was a general agent with power to waive.

Determination of the principal issue will resolve also the questions of error in the court's admitting evidence of Mintz' knowledge and giving plaintiff's instructions 1 and 2. Plaintiff's instruction No. 1, told the jury that defendant had the burden of proving that insured made false answers in the application and that such answers were material to the risk, knowingly and fraudulently made to procure the policies. Defendant says that since plaintiff admits falsity of the answers, the instruction is erroneous. Falsity of the answers was not an issue and the instruction should not have been given, however, the jury was correctly instructed as to the issues in other instructions and we cannot find that defendant was prejudiced. Plaintiff's instruction No. 2 reads as follows:

"If you find from the evidence that the agent of the defendant insurance company, Mr. Mintz, was vested with the duties and had the authority to solicit insurance of the deceased and to collect premiums on said policies and to deliver said policies to the assured, then the defendant insurance company would be chargeable with any knowledge that the said agent may have had pertaining to the medical attention, hospitalization or diseases prior to the date of the applications for insurance."

We shall refer to it later herein.

No error was committed in refusing to give defendant's refused instruction No. 1, because defendant's given instruction No. 2, covered the same point and told the jury that plaintiff had the burden of proving notice, of medical and institutional attendance within two years, to a duly authorized representative of the defendant capable of acting for the Company on such notice. The defendant's refused instructions 2 and 3

were properly refused since they disregard the issue of waiver.

The essential dispute revolves about the insistence of defendant on the point that Mintz was a special not general agent and accordingly without authority to waive the pertinent clauses of the policy and consequently defendant is not ·bound by any attempted waiver. A reading of the cases cited and others are not helpful to precise understanding of the terms general agent and special agent. ''To dwell upon suggested distinctions between the powers of general and special agents is unprofitable.'' 2 C. J. C. p. 1238. Each case must stand on its own facts in the light of general principles of agency, and the controlling precedents. Express agencies are not conclusive where greater powers than expressed are assumed and ratified, or where the agent is held out as possessing greater. Express prohibitions against waiving provisions may themselves be waived in the same fashion as express powers are enlarged.

Defendant has cited *Sommerio v. Prudential Ins. Co.,* 289 Ill. App. 520. There an assistant superintendent, limited in power by express instructions, exceeded the instructions by soliciting and giving a receipt with a statement when the policy would be effective. Justice FRIEND said at page 524 that it was common knowledge that all insurance solicitors are authorized to accept applications and the initial premiums and forward them, and to deliver the policy to assured, but these powers do not constitute a general agency, where the authority is otherwise limited. The distinction between that case and this is apparent. Here, the evidence on the whole indicates that as between him and the Colkys, he had a greater scope than that of a solicitor. In *Hancock Life Ins . Co. v. Schlink,* 175 Ill. 284, an agent advertised as ''general agent,'' but to offset that fact he was prohibited in writing from waiving provisions, and the court held

that since he had power to solicit, take applications, collect premiums and deliver policies, he had power to waive a condition therein. In *Niemann v. Security Benefit Ass'n,* 350 Ill. 308, it was held that notice to the agent of an insurer, at the time an application for insurance is made, of facts material to the risk is notice to the insurer which will prevent it from insisting upon a forfeiture because of such facts. The court there gave the *Hancock* case as authority for the statement that a *general agent* clothed with power to solicit insurance, receive and forward applications, receive and deliver policies and collect premiums has power to waive regardless of a provision in the policy which negatived that power. In the *Hancock* case, however, at page 290, the court did not use the term *general agent,* but simply *agent.* The same extension of the term used in the *Hancock* case is made in the *Mousette* case. We believe the rule which applies in favor of a beneficiary, where conclusions of the agent were written on the application instead of the truthful answers of the insured (*Weisguth v. Supreme Tribe Ben Hur,* 272 Ill. 541), should with greater force apply here where Mintz knew of Colky's condition; where the medical examiner should have detected that condition; where the company should have seen the contradictions in the answers in the two policies and especially since the Colkys could not read or write English. The *Hancock* case appears to be the leading case on the subject of an agent's power to waive and under it we are of the opinion that Mintz was empowered to and did waive the pertinent provisions of the policy; that the court properly admitted the evidence tending to prove Mintz' knowledge and that plaintiff's instruction number 2 was properly given.

For the reasons given the judgment in plaintiff's favor is affirmed.

*Judgment affirmed.*

Burke, P. J., and Hebel, J., concur.