## Joane Whitmore v. Mutual Life Insurance Company of New York

[173 A.2d 584]

March Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed May 2, 1961

Reargument Denied September 5, 1961

*E. Bruce Weber* for the plaintiff.

*A. Luke Crispe, John S. Burgess and John G. Kelly* (of the New York Bar) for the defendant.

**Smith, J.** This is an action for recovery on a contract of life insurance. The plaintiff is the beneficiary under the policy, being the widow of the insured, Dr. Michael M. Whitmore. The defendant pleaded fraud as a defense in its answer, and in her replication the plaintiff pleaded estoppel. The case was tried before a jury in the Windham County Court with a resultant verdict for the plaintiff. The defendant has brought the case here on its notice of appeal from the judgment and verdict.

The defense in this case is based upon the allegations of the defendant that Dr. Whitmore, the deceased insured, made false and fraudulent answers on his application for the policy of life insurance which is here sued upon, and that such fraud voided the policy.

The plaintiff has alleged that the defendant is estopped from its defense of fraud by the action of its agent in asking the insured the questions which were in the application for insurance, and by the agent then writing answers on the application other than those made to him by the insured.

A pretrial conference in the court below resulted in an order that the questions to be determined in the trial of the cause were to be decided under the laws of the state of Illinois. The pretrial order states that the issues of fact to be determined relate to the answers given on questions No. 2 and No. 4 on the application for insurance. These issues, three in number, are: (1) did the agent of the insured fill out the check marks in answer to questions No. 2 and No. 4; (2) if he did, did he then know from the insured that the insured had been hospitalized within a two-year period prior to the date of the application; it being conceded by the plaintiff that the insured had been 'hospitalized within the two-year period about which inquiry was made in the application, and (3) if the agent filled the blanks with knowledge of the hospitalization did such action on his part waive the disability conceded by the plaintiff and in doing so bind the company. Our rule on procedure is that the subsequent course of action in the trial of a cause is controlled by agreement or admissions made at the pretrial conference. 12 V.S.A. App. II R. 3A. *In re Cartmell Estate,* 120 Vt. 234, 238, 138 A.2d 592.

■■ After verdict for the plaintiff the defendant moved for a judgment in its favor, notwithstanding the verdict. The defendant also moved that the verdict be set aside and a new trial granted, confining its motions to legal grounds only. In considering the defendant's exceptions to the denial of its two motions we must treat them the same as a motion for a directed verdict. The motion cannot properly be granted if there is evidence fairly and reasonably tending to justify the verdict. The evidence must be taken in the light most favorable to the prevailing party and the effect of modifying evidence is to be excluded. The weight of the evidence and the credibility of the witnesses are for the jury to determine and all conflicts are to be resolved against the excepting party. *Langevin* v. *Gilman,* 121 Vt. 440, 445, 159 A.2d 340. See *Dashnow* v. *Myers,* 121 Vt. 273, 278, 279, 155 A.2d 859.

■ The defendant has first briefed its argument that there was a lack of good faith on the part of the insured in failing to disclose essential facts regarding his condition, and past medical treatments received by him, which, defendant says, the insured should have disclosed in his answer to question No. 2 on the application for insurance. The Illinois law in this regard is set forth in *Tanner* v. *Prudential Ins. Co.,* 283 Ill. App. 210. "But as a prerequisite to the application of such estoppel, the rule requires perfect good faith of the applicant, and will not tolerate intentional wrong on his part. It presupposes the existence of entire good faith on the part of the insured, and the absence of circumstances that would impute to him knowledge that the insurer would be deceived by the application submitted." *Pellon* v. *Connecticut General Life Insurance Co.,* 105 Vt. 508, 516, 168 A. 701.

Our task is to examine the facts in the record, taken in the light most favorable to the plaintiff, to see if they bring the case within the rule of estoppel just stated.

The insured, a veterinary surgeon, came from England to the United States in February 1958, purchased a home in Westminster, Vt., and started to practice his profession in the office of Dr. I. Tucker Burr, a veterinarian, with offices in Walpole, N. H.

The records of an English hospital, appearing here in evidence, indicate that Dr. Whitmore, before coming to this country, received treatment at the English hospital from December, 1956 until November, 1957, which included x-ray treatments. Upon the six pages of

the English hospital records there is only one entry referring to Hodgkin's disease. The entry on the last date of these records is as follows: "Now feels 100% well." The reference made is to the insured.

The copy of the death certificate of Dr. Whitmore gives the date of his decease as December 19, 1959, and the cause of death as Hodgkin's disease.

On October 24, 1959, one H. Francis Mahoney, a field underwriter for the defendant insurance company, called on Dr. Whitmore at the office in Walpole, N. H. The purpose of Mr. Mahoney's call was to sell to Dr. Whitmore an insurance policy, which included health and accident provisions, as well as the life insurance, and which was underwritten by the defendant company.

This was a group insurance policy, which was issued under a trust agreement by the defendant with the American Veterinary Medical Association, of which association Dr. Whitmore was a member. Mahoney had with him an application form, containing questions to be answered by the applicant for insurance, and which was then sent on to the defendant company by the agent for its approval. Upon such approval the policy would issue.

On this application form question No. 2 was: "Have you or any member of your family to be insured, if any, been disabled by accident or sickness or received medical or surgical care or advice in the past two years?" The question is followed by two boxes marked respectively "Yes" and "No." The question is answered by placing a check mark in the appropriate box. The boxes, in turn, are followed by the following statement, in parenthesis, "If yes, please give names, dates and duration on the reverse side."

The other question on the application with which we are concerned, No. 4, reads: "To the best of your knowledge and belief are you and members of your family to be insured, if any, now in good health and free from physical impairment and disease?" This question is followed by the identical type of box to be checked for a yes or no answer as in question No. 2. These boxes are also followed by a statement reading: "If no, please give details of all exceptions not listed in 2 and 3 on the reverse side."

On the trial of the case the question of who asked the questions on the application and checked the answers presented no problem. Mr.

Mahoney, the field underwriter for the defendant, testified that he asked the insured all questions which were asked of him, and that he, Mahoney, wrote or checked the answers on the application. The box checked after each of the two questions here involved was "No," and no writing of any kind appears on the reverse side of the application for insurance.

It was Mahoney's testimony that he was in Dr. Whitmore's office, in all, about fifteen minutes. He received a check for the first premium from the insured and left. Later, he testified, he recalled that he had failed to get Dr. Whitmore's signature on the application and so returned to the office. Dr. Whitmore being absent at that time the witness testified he left the application with the office receptionist to obtain the signature of the insured. He did not testify that the insured ever saw, or examined the application of insurance, and, of course, he did not testify as to the insured signing the application.

The receptionist with whom Mahoney stated he left the application to be signed was a Mrs. Kurkel, but her testimony is quite different from his on this, as it is on other factual aspects of the making out of the insurance application.

Mrs. Kurkel's testimony is that she was present in the same room at all times while Mr. Mahoney and Dr. Whitmore were both present, and that she was close enough to both of them to overhear the entire conversation between them. Her evidence was that Dr. Whitmore, in answer to question No. 2, told Mr. Mahoney of his hospitalization and illness in England. It is her testimony that question No. 4 was never asked by Mahoney of the insured. It is true, as the defendant points out, that she also testified that she did not hear question No. 4 asked of Dr. Whitmore. But we do not find the inconsistency between these two answers that the defendant would have us, for a question unspoken is also a question unheard.

The testimony of the receptionist also is that Dr. Whitmore dated and signed the application at that very time, but that the application was placed in front of him for only a few seconds, so that he had no time to read it. And her evidence is that Mahoney never returned to the office with the application for her to obtain Dr. Whitmore's signature.

The court below in its charge to the jury stated: "If you believe that the agent properly recorded the answers of the deceased in this

case on the application in evidence then the plaintiff cannot recover and your verdict must be for the defendant." The charge also contained this statement, referring to Dr. Whitmore, that if "he knew the contents of the application that he signed or had a reasonable opportunity to learn its contents" he would be chargeable with such knowledge and the verdict should be for the defendant. No exceptions were taken by the defendant to these portions of the charge.

The jury, by its verdict for the plaintiff, found that the answers of "No" to questions No. 2 and 4 were not those of the insured, and that he had no knowledge of the falsity of the answers made by the agent.

Viewing the evidence in the light most favorable to the plaintiff, the agent of the defendant should have answered question No. 2 with a "Yes" when the insured disclosed to him that he had been ill and hospitalized during the two previous years. If the answer had been thus entered the application then called for the details of the illness and hospitalization to be set forth fully on the reverse side of the application, which would have given the defendant the information which it now claims was fraudulently withheld from it by the insured. Stating the same thing in a slightly different manner, the evidence is that the insured fully and truthfully answered question No. 2, but the act of the agent in misstating the answer on the application, without the knowledge of the insured, resulted in no inquiry being made of the insured, which the application provided for, and which would have elicited the very information from the insured which defendant now claims was fraudulently withheld. Again, taking the evidence in the light most favorable to the plaintiff, the same reasoning applies to the answer given on question No. 4. The answer was that of the agent, and not that of the insured, for the insured was never asked the question, and did not know of its existence.

■ "Where one makes true answers to the questions in an application for insurance, the validity of the insurance is not affected by the falsity of the answers inserted by an agent of the company, even though the application contains a stipulation that the agent took the application as the agent of the insured."

■ "It is notorious that contracts of insurance are on the part of the assured, entered into without the advice of counsel, and chiefly

upon the representations of the agents of the insurer. Such agent is justly looked upon as the accredited agent of the company, in whom it has confidence, and holds out as worthy of the confidence of its patrons. Further, the assumption is perfectly natural that he knows just what information his principal desires, and in what language it may be best expressed." *Royal Neighbors of America* v. *Boman,* 177 Ill. 27, 52 N.E. 264, 266.

In the case of *Nogulich* v. *Metropolitan Life Insurance Co.,* 317 Ill. App. 411, 46 N.E.2d 396, 398, the defendant company sought to avoid payment on a life insurance policy on the ground that the insured answered certain questions on an application for insurance falsely and untruthfully, knowing them to be such, in its answers. No rejoinder was filed by the defendant and no averments were made that the agent lacked authority to waive any provision of the policy.

The essential facts in the case were somewhat similar to those now presented here. The applicant was infected by tuberculosis, but the evidence did not disclose that she had been informed, or knew, that she had the disease at the time of making out the application. The insured signed the application in blank, and the answers on the application were written thereon by agents of the company.

It was the decision of the Illinois court that the question of the authority of the agent of the company to waive any provisions of the insurance policy could not be raised in the absence of such an allegation in the rejoinder, such issue not being raised by the pleadings in the case.

The question was also raised as to the admissibility of evidence, offered by the plaintiff, that the questions had been answered truthfully by the insured, but that the answers on the application, made by the agent, were not in accord with the answers so given. The evidence was offered by the plaintiff, not to vary the terms of the contract, but to show that the defendant company was estopped to set up the defense that the policy was void because of the untrue answers.

In sustaining the admission of the evidence for the purpose sought by the plaintiff, the Illinois court stated: "The soliciting agent and the medical examiner were agents of the defendant, not the insured. Even if the policy has provided otherwise, a provision of this kind would be invalid under the statute * * * There are numerous well considered cases in this state holding that such evidence is admissible,

and may create an estoppel or waiver." *Royal Neighbors of America* v. *Boman, supra,* was cited with approval.

In the case of *Weisguth* v. *Supreme Tribe of Ben Hur,* 272 Ill. 541, 549, 112 N.E. 350, 353, the Supreme Court of Illinois, quoting from *Provident Savings Life Assurance Society* v. *Cannon,* 201 Ill. 260, 261, 66 N.E. 388, 389, said : "Notice to the agent, at the time of the application for insurance, of facts material to the risk, is notice to the insurer, and will prevent it from insisting upon a forfeiture for causes within the knowledge of the agent."

The question in each case of this nature is whether the answers made by the applicant are knowingly false. *Joseph* v. *New York Life Insurance Co.,* 219 Ill. App. 452. As we have before stated, the evidence in the instant case, in the light most favorable to the plaintiff, is that the insured answered the questions asked of him truthfully. It was the false answer placed on the application by the agent that induced the defendant to issue the policy, and not the actual answer made by the insured.

. We have read the many cases cited to us by the defendant relative to a lack of good faith on the part of the insured in answering questions on an application being a bar to the application of estoppel. Each of these cases, however, has evidence of a fraudulent concealment of facts on the part of the insured, which the jury did not find in the instant case.

█ The defendant also claims prejudicial error on the part of the trial court in refusing to charge the jury in accordance with certain requests to charge made by the defendant, but makes no argument or cites no authority in support of its bare assertion. This is improper briefing and the question need not be considered by us. 12 V.S.A. App. I Rule 18. *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 130 A. 758. The defendant takes nothing by this exception.

The second argument briefed by the defendant is that the evidence of the plaintiff was insufficient to show that question No. 4 was waived by the agent or that the agent falsely recorded the answer on the application but, as we before noted, the evidence, taken in the light most favorable to the plaintiff, is that the question was never asked of the insured.

The defendant also argues that the insured in signing the application accepted such answer as being true and correctly transcribed. Illinois does not follow the rule that an insured is under a duty to read

the application form where the applicant simply signed the application form which was wrongfully filled out by the agent. *Royal Neighbors of America* v. *Boman, supra,* p. 265. The defendant takes nothing by this exception.

The defendant next briefs its exception to the charge of the lower court relative to the waiver of the terms of the master policy by an agent of the company. The pretrial order does not set forth the question of the power of the agent to waive a provision of the policy as an issue to be decided in this case. The transcript disclosed that no evidence was presented on this issue. The issue, therefore, cannot be presented in this court, not having been raised below.

The charge of the lower court was, in effect, that the law of Illinois is that the provisions of a master policy might be waived by an agent of the company if he "was clothed with power to solicit insurance and accept answers to questions and to fill in on his own such answers to such questions as he deems they should be filled in." In *Niemann* v. *Security Ben. Assn.,* 350 Ill. 308, 183 N.E. 223, 227, the Illinois court held: "A general agent clothed with power to solicit insurance, receive the application and forward to the company, receive and deliver the policy and collect the premium, has power to waive a condition of the policy notwithstanding that power is negatived by provision in the policy and his contract of employment."

The testimony of Mr. Mahoney, the agent in the case now before us, is that he had been employed by the defendant company as an underwriter or agent since 1945, that he had served on the advisory board of the company, had worked as an assistant manager training new men for the company, and was one of the top salesmen for the defendant throughout the country. He testified that it was the policy of the company for the agent to ask the questions called for on the application of the insured. He further testified that he collected the premium from the insured, upon which he received a commission, and forwarded the premium, together with the application, to the defendant company for its approval.

The defendant has cited to us the case of *Spence* v. *Washington National Insurance Co.,* 320 Ill. App. 149, 50 N.E. 2d. 128, an intermediate appellate court, in support of its contention that Mahoney was only a "soliciting agent" of the company, and, as such, had no authority to waive any of the provisions of the master policy.

The factual situation in the case so cited is quite different from that presented here. The insured in that case had a copy of the policy in his possession for some time before he had applied for the insurance. The person who solicited the insurance from him, and placed the answers on the application, was not employed by the defendant company, was not an agent of any kind for the company, and the company had no control over him. Contra, *James* v. *Metropolitan Life Insurance Co.,* 331 Ill. App. 285, 73 N.E.2d. 140, 143.

■ The charge of the lower court in the case before us, here objected to, was a gratuity under the pleadings in this case. *Pelaggi and Co.* v. *Orient Ins. Co.,* 102 Vt. 384, 397-398, 148 A. 869. However, we do not believe it was in error under the facts here presented, and in any event was harmless, even though a gratuity, to the defendant. The exception of the defendant is not sustained.

■ The defendant has also excepted to the claimed failure of the court to a "full and complete charge on the legal effect of collusion between the insurance agent and the insured." Nothing in the pleadings filed by the defendant in this case indicates any defense of collusion between agent and insured as an issue in the case. No evidence of any nature appears in the transcript of the case before us to even infer that any agreement existed between insured and agent to defraud the defendant company, which would be necessary to establish collusion between these persons. It was not an issue in the case tried below and the lower court was not bound to charge upon it. The exception cannot be sustained.

The defendant also excepted to the failure of the lower court to charge, in compliance with its request, on the claimed issue of Mr. Mahoney's status as agent of the American Veterinary Medical Association. The pretrial order does not make the question of Mr. Mahoney's agency for the Veterinary Association an issue to be decided by the jury. No error is found in the refusal by the lower court to charge the jury in accordance with this request of the defendant.

The last exception briefed by the defendant is to a claimed ruling of the lower court in excluding evidence offered by the defendant upon the good faith of the insured. No authority is cited by the defendant in its brief on this claim of error.

The evidence excluded was a request of the defendant to put upon the record a statement of what one Dr. Tatem would testify to about

a conversation held with the insured prior to the making of the application for insurance. There is nothing in the record before us to indicate why Dr. Tatem was not present to testify, or why he could not be present if he had been called as a witness by the defendant. There appears no concession upon the record, entered into by counsel for both parties, that Dr. Tatem, if present in court, would testify as the statement offered by the defendant states, which is customary in placing such statements of absent witnesses in evidence.

The statement sought to be entered is that the insured told Dr. Tatem that he had been ill and hospitalized in England, had x-ray treatments there, and knew the matter was serious at that time. It disclosed no evidence that the insured knew that he had Hodgkin's disease at the time of this hospitalization, nor does it disclose any knowledge on the part of the insured at the time he applied for insurance, that he had such disease or was then seriously ill.

The record shows that the hospital record of the insured while in England was already in evidence in the case, as well as the evidence of the plaintiff that the insured had informed the agent of his illness and hospitalization in England. It will also be recalled that the plaintiff's evidence was that question No. 4, questioning the insured on his condition of health at the time of making the application, was not asked of the insured.

Under these circumstances the ruling of the trial court that such offered statement would only be cumulative evidence, and immaterial to the issues before the court, was correct, and the exception of the defendant is not sustained.

*Judgment affirmed. Motion for reargument denied.*