New York Life Ins. Co. *v.* Michael H. McLaughlin et als.

February Term, 1942.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed May 5, 1942.

*Lawrence and O'Brien* for the plaintiff.

*Thomas F. Mangan* and *Asa S. Bloomer* for the defendants.

SHERBURNE, J. In 1925 the plaintiff insurance company issued to the defendant Michael H. McLaughlin two life insurance policies. These carried double indemnity and disability benefits and called for extra stated premiums to cover the extra risks. Premiums were due each second day of September, with a grace period of one month allowed for payment. If premiums were not so paid the policies would lapse except as to certain benefits, such as cash surrender values, paid up insurance, or continued insurance. The policies provided for reinstatement within five years after any default upon written application by the insured and upon presentation of evidence of insurability satisfactory to the company, and they each contained a provision

that the policy should be incontestable after two years from its date of issue except for non-payment of premiums and except as to provisions and conditions relating to disability and double indemnity benefits. The premiums due on September 2, 1937, were not paid within the period of grace, but the policies were shortly thereafter reinstated upon the written application of the insured. On September 12, 1939, the insured made application for total and permanent disability benefits. After an investigation made in October and November following the plaintiff on December 27, 1939, notified the insured that it rescinded the provisions for disability and double indemnity benefits contained in his policies, and sent to him two checks in the sum of $156.28 with the following explanation: "Refund premiums with interest on a/c of rescinded disability and double indemnity benefits * * *". These checks have never been cashed by him. On July 12, 1940, the insured brought suit against the plaintiff claiming disability benefits under the policies, and soon thereafter this suit in equity was brought praying that the double indemnity and disability provisions of the policies should be adjudged to be null and void and cancelled as of September 2, 1937, and that the insured be enjoined from prosecuting his action at law, and that all of the defendants be enjoined from beginning any action on such policy provisions, on the ground that the insured made false and fraudulent representations in his application for reinstatement. The defendants are the insured and the beneficiaries under the policies. Findings were made and decree was entered for the defendants, to all of which the plaintiff excepted.

It appears from the findings and necessary inferences therefrom that on October 19, 1937, the insured forwarded to H. Sumner Hunt, cashier of the plaintiff's Burlington Office, an application for reinstatement, accompanied by a check for the amount of the premiums due September 2, 1937, together with interest thereon. This application for reinstatement contained the following questions and answers thereto:

> "1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued?
> "Ans. Yes.

"2. Within the past two years have you had any illnesses, diseases or bodily injuries or have you consulted, or been examined or treated by any physicians or practitioners? (If so, give full details, including nature, date, and duration of each illness, disease or injury, the name of each physician, or practitioner, and the dates of and reasons for consultation or treatment.)

"Ans. No."

The application also contained a third question and answer referred to below. It also contained the following: "I make the representations contained in my answers to the following questions," and "I hereby certify that the foregoing answers are full, complete and true, and agree that the company believing them to be true shall rely and act thereon." Mr. Hunt duly deposited the check and on October 20, 1937, wrote the insured acknowledging its receipt and said:

"We notice that from your application for reinstatement you have answered question (3) 'Yes'. If it was your intention to answer it in this manner won't you kindly give us the name of the company that declined to reinstate insurance on your life. In the event that it was your intention to answer this question 'No,' we enclose a new form and ask that you complete it making sure that you date the form the same date you sign it, and have your signature witnessed.

"Upon receipt of this form completed, we will submit it to our Home Office for their consideration."

The new form was filled out in the same manner as the first, except that question 3 was answered "No." Because it was dated back to September 2, 1937, contrary to the foregoing instruction, still another form was sent to the insured. This was filled out in the same manner as the second, and was dated and forwarded October 30, 1937. Shortly thereafter the insured was informed that his policies were reinstated, and receipts for the premiums were sent to him.

When the policies were reinstated Mr. Hunt had no knowledge or information that the answers to questions 1 and 2 in the application signed by the insured were not correct, and believed them to be true. When Mr. Keenan, of the home office and chief clerk in charge of reinstatements, approved the reinstatement he had no knowledge or information that these answers were not true, and he believed them to be true and correct. These answers were false in the following respects: In 1936 or 1937 the insured had a small cyst removed by Dr. Hinds at the hospital. During the period from February to October, 1937, the insured complained that he did not feel good and that his back bothered him. On September 13 and 15, 1937, while in bed, he was attended by Dr. Ryan. On these occasions he was troubled by a low back pain, which the doctor attributed to infected back teeth, and he advised him to see a dentist. On October 11, 1937, a dentist extracted four lower teeth because the insured was having trouble wearing a partial lower set.

The findings further show that subsequent to November 8, 1937, the insured complained of his back and was unable to do the things he had formerly done, though still attending to his business. On March 12, 1938, he was stricken with cerebral thrombosis, since which time he has been totally and permanently disabled. The findings conclude with the statement that on October 30, 1937, the insured was in the same condition of health that he was when the policies were issued, except that he was twelve years older. In our consideration of the case it is unnecessary to discuss the exception to this finding.

We will omit consideration of the insured's answers in so far as they relate to his condition of health and any illnesses or diseases, and come directly to that part of question 2 which asks if he has consulted, or been examined or treated by any physicians within the past two years. If there is any ambiguity in the question its language is to be construed against the insurance company. *Stanyan* v. *Security Mutual Life Ins. Co.*, 91 Vt. 83, 99 Atl. 417, L. R. A. 1917C, 350. But we fail to see any doubt in its meaning. After asking about illnesses, diseases and bodily injuries, it inquires if he has consulted, or been examined or treated by any physicians. It is clear that this refers to such contacts with physicians irrespective of whether he ever had any

illness, disease or injury. The insured was an experienced business man and must have so understood it. Unlike the many questions usually asked in an application for insurance the insured was asked three simple questions. There is no need to go into any fine distinction as to what is meant by consulting a physician, as in *Billings* v. *Metropolitan Life Ins. Co.*, 70 Vt. 477, 41 Atl. 516, or in *Schofield's Admx.* v. *Metropolitan Life Ins. Co.*, 79 Vt. 161, 64 Atl. 1107, 8 Ann. Cas. 1152. There can be no question but that the insured either consulted, or was examined or treated by Dr. Ryan on September 13 and 15, 1937.

■ Between October 19 and 30, 1937, only a little over a month after the insured had been visited by Dr. Ryan while in bed, he filled out three different applications in which he each time answered "No" to question 2. He could hardly have forgotten in that time. It is also significant that he dated the second application back to September 2, and prior to September 13 and 15, the dates when he was attended by Dr. Ryan. By his answer he assumed to have knowledge respecting matters such as the insurance company might reasonably suppose to be within his knowledge. The answer being false, the law will infer an intent to deceive in the absence of explanation. *Spaulding* v. *Mutual Life Ins. Co.*, 94 Vt. 42, 48, 109 Atl. 22; *Fitzgerald* v. *Metropolitan Life Ins. Co.*, 90 Vt. 291, 303, 98 Atl. 498. No explanation is advanced.

■■ The chancellor failed to expressly find that insured's answer was material, or that it was relied upon. Our rule is that if the statement is a mere representation, its falsity will not avoid the policies unless the matter stated is material to the risk; but insurance procured by means of representations which are intentionally fraudulent, and are in fact relied upon, is voidable, even though the statements relate to matters not so material. *Fitzgerald* v. *Metropolitan Life Insurance Company*, 90 Vt. 291, 301, 98 Atl. 498, 503. The opinion in that case quotes the following from *Mascott* v. *First National Fire Insurance Company*, 69 Vt. 116, 125, 37 Atl. 255:

> "Any fact is material the knowledge or ignorance of which would materially influence the insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance."

On page 305 it states: "It must be remembered also that false answers which close the avenues of inquiry as to material matters may themselves be material."

Our rule is similar to that given in 3 Kent's Com. 283, where it says: "If the misrepresentation was by fraudulent design, it avoids the policy, without staying to inquire into its materiality; and if it was caused by mistake or oversight, it does not affect the policy unless it was material, and not true in substance." This is substantially the rule adopted in the Restatements of the American Law Institute. In the Restatement of Contracts, Sec. 476, Comment b, it states: "Innocent material misrepresentation though not accompanied by negligence has the same effect as fraud in rendering a contract or discharge voidable. The difference between the effect of innocent and that of fraudulent misrepresentation in producing this result is twofold. In the first place materiality of the mistake induced by innocent misrepresentation is essential while materiality is not essential if a mistake induced by fraud produces the intended consequences. One who makes an innocent misrepresentation of an unimportant fact has no reason to suppose that his statement will cause action, but fraud is directed to that very end, or is expected to achieve it, and if the result is achieved the fraudulent person cannot be allowed to insist on his bargain." A similar thought is expressed in the Restatement of Restitution, Sec. 9, Comment b. In the Restatement of Torts, Sec. 538, (1), Comment g, the rule as to the materiality of the fact represented in determining liability for pecuniary harm caused by fraudulent misrepresentation is distinguished thus: "The rule stated in this Subsection differs from the rules which determine the right to rescind a contract induced by fraudulent misrepresentations, see Restatements of Contracts, Sec. 471, Comment i, and Sec. 476, and to obtain restitution for benefits procured thereby, see Restatement of Restitution, Sec. 9, b. In neither of these cases is it required that the misrepresentation, if fraudulent, be as to a matter which is material; materiality being important only where the misrepresentation is negligent and not fraudulent." See also Williston on Contracts, Sec. 1490, which states: "It is laid down in the cases that a misrepresentation must be material in order that the law may take notice of it as a fraud. If, however, a party to a

bargain has made misrepresentations for the purpose of inducing action by the other, and the other party has acted, relying upon the misrepresentations, it seems that the former should not be allowed to deny that misrepresentations which have effectively served a fraudulent purpose were material. This in effect is saying that any misrepresentations which were intended to bring about a particular result and which do bring about that result are sufficiently material.'' This statement by Professor Williston, who was reporter for the American Law Institute's committee on contracts, clarifies the comments we have quoted from the restatements.

The findings show that this answer was given as an inducement for the plaintiff company to reinstate the insurance, and the insured certified that it was true and agreed that the company believing it to be true should rely and act thereon. The plaintiff's agents had no knowledge that it was untrue and believed that it was true. The last application was mailed at Rutland on October 30 to Mr. Hunt in Burlington where it was received November 1. It was then forwarded to the home office in New York, where it was approved by Mr. Keenan on November 5. Such prompt approval, together with the letter from Mr. Hunt which we have above quoted, making it clear to the insured that the company was anxious to have the insured fill out his application correctly, necessarily shows that under the circumstances the company acted in reliance upon the insured's answers. Then, too, it should not be overlooked that the questions were all reasonable ones, and that there were only three of them. The company was entitled to honest answers so that it could intelligently decide whether it wished to reinstate the policies. Because the insured answered question 2 as he did with the intent to deceive the plaintiff and thereby induced it to reinstate the policies he has made his answer material. It follows that the policies are voidable in the respects herein claimed.

The findings go into detail about the notation upon insured's check sent to Mr. Hunt on October 19, 1937, with his first application for reinstatement, and its endorsement and collection through the bank, and conclude with the statement that the check was accepted by the company before the application for reinstatement was acted upon. To this the plaintiff excepted on

the ground that it was not accepted, but was deposited only for the purpose of retaining the money until the application had been amended and acted upon. This exception is sustained. Each of the three applications for reinstatement contained this sentence: ''If said policy is not so reinstated, I agree to accept return of all sums paid in connection with this application, without interest.'' This agreement nullifies any notation upon the check in so far as it might overwise establish an accord and satisfaction.

Since the bill in equity seeks cancellation of the double indemnity provision, concerning which no question can be raised in an action at law until the death of the insured, it sufficiently appears that equity has jurisdiction. See *Holton, Admr.* v. *Hassam,* 94 Vt. 324, 328, 111 Atl. 389.

*Decree reversed, and cause remanded with directions that a decree be entered for the plaintiff cancelling the double indemnity and disability provisions of the policies as of September 2, 1937, and enjoining the insured from prosecuting his action at law, and enjoining all of the defendants from beginning any action upon either of such provisions, and that the plaintiff recover its costs.*