## Fireman's Fund Insurance Company v. John K. Knutsen, et al.

[324 A.2d 223]

No. 92-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 22, 1974

Motion for Reargument Denied August 8, 1974

*Dick, Hackel & Hull,* Rutland, for Plaintiff.

*Philip A. Angell, Jr., Esq.,* Randolph, for John K. Knutsen.

*Monte & Monte,* Barre, for Arlene Knutsen.

**Daley, J.** The plaintiff insurance company issued to John K. and Arlene Knutsen an automobile liability policy upon application made by them to the Brown Insurance Agency in Montpelier, Vermont, on July 31, 1970. Both Knutsens were named insureds, and the vehicle covered by the policy was a 1970 Oldsmobile, registered in Vermont to Arlene Knutsen.

On December 31, 1970, John K. Knutsen was involved in an accident in Connecticut while operating the insured automobile. As a result of the accident, the defendant Walter E. Howard, suffered personal injuries. Liability actions have been brought by Walter E. Howard or Lorene Howard, his conservator, in the states of Connecticut and Texas, against the defendants Knutsen based on this accident.

The plaintiff company, by a petition for declaratory relief in the Orange County Court, requested the court to declare the policy issued the Knutsens void *ab initio* on the ground of fraudulent misrepresentation made by the named insured in the application for insurance. Because of the claim made by the Howards, they were joined as parties defendant. The trial court, sitting without a jury, denied the plaintiff's request for an order declaring the plaintiff is not obligated to defend any claim against the Knutsens or to pay any judgment that may be rendered against them or either of them arising out of the accident on December 31, 1970. It also denied the plaintiff's request that the policy be declared null and void, and dismissed the action on the merits. The plaintiff appeals.

## I.

The lower court found that both Mr. and Mrs. Knutsen were asked the following questions in the course of their application for the policy on July 1, 1970:

(a). Have you ever had your license suspended or revoked?

(b). Have you ever had insurance refused or cancelled by any company?

(c). Have you been cited for traffic violations other than parking in the last five years?

The answers given by both were in the negative. The answers given by Mr. Knutsen were admitted by him at the hearing below to be untrue. Mrs. Knutsen's answers were apparently true as to her. The application, a part of the policy issued by the Brown Agency and the appellant, also contains statements made by the defendants relating to present address, length of time in Vermont, and previous address, as well as standard questions relating to use of the automobile by each of the insureds.

The record, briefly summarized, discloses the following. Mr. and Mrs. Knutsen at all times material were residents of the state of New York. They were married in 1969 and later that year purchased undeveloped real estate in Brookfield, Vermont. In January, 1970, Mr. Knutsen came to Vermont, applied for and obtained a Vermont motor vehicle operator's license. He is employed as chief engineer on an ocean-going tug.

Mr. Knutsen has had various difficulties in the state of New York relating to his operation of motor vehicles. His New York motor vehicle license was revoked on March 4, 1967, after several previous suspensions, for failure to submit to a chemical test, and again on June 8, 1968, for having been involved in an automobile accident while driving uninsured. He applied for a driver's permit in New York on May 21, 1968, and his application was denied on July 29 of that year for failure to answer an outstanding summons. Late in 1968, he obtained an operator's permit in Rhode Island, listing as his address his employer's headquarters in Rhode Island. He had no valid operator's license from March 4, 1967, until January 19, 1970, when he obtained his Vermont license, except for the Rhode Island permit, which, he testified, lapsed in September of 1969, when the Knutsens took up residence in New York following their marriage and honeymoon. Mr. Knutsen's New York insurance was cancelled on December 17, 1966. There is no evidence that he carried any other automobile insurance from that time until July 31, 1970.

On July 28, 1970, Mr. Knutsen purchased the 1970 Oldsmobile in New York as an anniversary gift for his wife. The bill of sale for the automobile was taken in the name of Arlene Knutsen, and three days later this same vehicle was registered in Vermont in her name alone. Mrs. Knutsen also owned at this time, and for as long as they had known each other, a 1963 Pontiac. Another automobile, a 1969 Triumph convertible, which was purchased and registered in her name before they were married, was sold when the Oldsmobile was purchased. Mrs. Knutsen testified that the Triumph, and later the Oldsmobile, was her pleasure car, and that Mr. Knutsen only used it once in a while. However, she also testified that Mr. Knutsen drove the Triumph to the shipyard

and parked it there and that it was the car he drove when he took her out during their courtship.

On his January 19, 1970, application for a Vermont operator's license, Mr. Knutsen answered "no" to the question, "Is your operating privilege restricted, suspended, revoked or refused in any state?" His New York revocation was in effect at that time. He had responded in the affirmative to a similar question asked on his New York driver's permit application of May 21, 1968. Although his Rhode Island permit application was not in evidence, his testimony indicates that he probably answered a similar question, if there was one on the Rhode Island application, in the negative, on the assumption that in each case the question related only to the status of his license in the state in which he was applying.

Mr. Knutsen gave a similar explanation of his responses to the crucial questions in the interview with Ashley Hudson of the Brown Insurance Agency, which is cited in Finding 23 of the findings of fact: "Mr. Knutsen explained his failure to answer the questions . . . correctly by asserting he thought the questions pertained only to his Vermont license." It should be noted that the court, by merely reciting this testimony without comment, made no finding as to the credibility of the explanation as would constitute in a legal sense a finding of fact. *Krupp* v. *Krupp*, 126 Vt. 511, 236 A.2d 653 (1967).

■ In the present instance, the record as a whole, in light of the applicable case law, supports only one inference as to intent; namely, that Mr. Knutsen misrepresented his motor vehicle and insurance background to the applicant's agent with actual intent to deceive.

■ It is a general rule of Vermont law that material or fraudulent misrepresentations in applications for life insurance are grounds for declaring the policy void *ab initio*. *New York Life Insurance Co.* v. *McLaughlin*, 112 Vt. 402, 26 A.2d 108 (1942); *Pellon* v. *Connecticut General Life Insurance Co.*, 105 Vt. 508, 168 A. 701 (1933). Although we have no decision of this Court applying the above rule to applications for automobile liability insurance, we see no reason why the same principle should not apply, as codified in 8 V.S.A. § 4205, which reads:

> The falsity of a statement in the application for a policy covered by such provisions shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by insurer.

It has long been recognized that, because of the element of intent, positive proof of fraudulent misrepresentation is seldom to be had, and the law will allow consideration of a wide range of circumstantial evidence. Circumstances inconclusive in themselves if separately considered may, by their number and joint operation, be sufficient to constitute conclusive proof in matters involving fraudulent intent. *Castle* v. *Bullard*, 23 How. (64 U.S.) 172, 187 (1859). No evidence will be considered irrelevant, so long as that evidence, by itself or in conjunction with other evidence, contributes something to the establishment of a rational basis for inferring the ultimate fact. *Westlund* v. *O'Bryan Construction Co.*, 123 Vt. 301, 187 A.2d 507 (1962).

Similar fraudulent acts, if committed sufficiently near in time so that the same motive may reasonably be supposed to exist, are admissible to establish intent, on the sound logical principle that such similar acts diminish the possibility that an innocent mistake was made in an untrue and misleading statement. *Eastman* v. *Premo*, 49 Vt. 355 (1877); *Morrison* v. *United States*, 270 F.2d 1 (4th Cir. 1959), *cert. denied*, 361 U.S. 894 (1959). When a representation is made and its falsity not denied, an intent to deceive will be inferred in the absence of explanation. *New York Life Insurance Co.* v. *McLaughlin*, 112 Vt. 402, 26 A.2d 108 (1942).

The lower court's conclusion that "the misrepresentations made by Mr. Knutsen, and the manner in which they were made, do not support a finding that they were made with an actual intent to deceive", is the equivalent of a finding of fact on the question of intent. Such a finding must stand if it is not clearly erroneous but is fairly and reasonably supported by the evidence. *Wells* v. *Village of Orleans*, 132 Vt. 216, 315 A.2d 463 (1974).

The trial court's appraisal of the credibility of witnesses is entitled to due respect. However, this Court has a

greater latitude to come to its own conclusions from the facts when such facts are not in substantial dispute. *State Farm Mutual Automobile Insurance Co.* v. *Wall,* 222 A.2d 282 (N.J. Super. 1966).

Mr. Knutsen's actions speak louder than his testimony in seeking to justify his misrepresentations by saying that he believed the questions related only to his Vermont activities. The undisputed facts of the record disclose a pattern of actions in which Mr. Knutsen attempted to obtain both the privilege to drive and the protection of automobile insurance without disclosure of his previous record—a pattern which extended to knowing misrepresentations, first on the occasion of his Vermont license application, and secondly on the occasion of his application for insurance.

After Mr. Knutsen's attempt to reinstate his New York driver's privilege met with failure, he obtained a Rhode Island driving permit on the strength of his employment address, even though by his own testimony he retained his permanent apartment in New York. When the Rhode Island permit lapsed, he obtained a Vermont license on the basis of a claim of residency which, whether technically proper or not, was at the least somewhat hasty. The Vermont application was made on January 19, 1970, three weeks after the closing on the Brookfield property. The time of year did not permit even the beginning of construction on the Brookfield site, and Mrs. Knutsen had continuing teaching obligations in New York for the remainder of the school year. Actual residence in Vermont, under the most favorable conditions conceivable, was more than six months away.

The concurrent possession of two automobiles registered and insured in the name of Mrs. Knutsen, while perhaps subject to innocent interpretation, undeniably gave Mr. Knutsen access to independent use of an insured automobile without disclosing his previous record. The record is sufficient to indicate that Mr. Knutsen took advantage of this access by driving the second car on occasion and, at least in the case of the Triumph, assuming responsibility for parking the vehicle when not in use.

Mr. Knutsen's statement on his Vermont license application is the element most damaging to his claim of innocent misrepresentation. That he responded in the negative to a

question concerning license revocations and suspensions "in any state," on the assumption that it referred to Vermont only, strains credibility to the breaking point. His New York experience made him aware of the importance of previous revocations and suspensions to the operating privilege. It is not to be believed that he read over the question on his Vermont application so casually as to misread the plain import of the question, and that he repeated this error later on his insurance application.

Mr. Knutsen's latest New York license revocation would have established for him, if he were not already aware of it, the importance of insurance in maintaining his driving privilege if involved in an accident. Mr. Knutsen's wish to obtain a driver's license had already extended to the point of making a positive misrepresentation on his application to the Vermont Department of Motor Vehicles. A truthful response to the questions posed on the insurance application would not only have placed his insurance application in jeopardy, but it would have exposed his previous misrepresentation on the license application to possible discovery.

There is no indication on the record that Mr. Knutsen was of less than average intelligence or possessed some other characteristic which rendered him incapable of comprehending the meaning and import of the questions posed to him by Mr. Hudson. *Cf. Pellon v. Connecticut General Life Insurance Co.*, 105 Vt. 508, 168 A. 701 (1933). The average person would understand, even without Mr. Knutsen's background of motor vehicle difficulties, that the questions posed by Mr. Hudson were designed to elicit the extent of the risk from the applicant's background record, and that reference to the preceding six months period alone would not accomplish this. If there was any doubt in his mind as to the import of the questions, it would have been resolved by a simple inquiry to Mr. Hudson. We can only conclude that Mr. Knutsen either knew, or should have known, that the statements he was making were false, and that his conduct belies an innocent explanation.

We hold, therefore, that the only reasonable inference to be drawn from the evidence is that Mr. Knutsen misrepresented the facts with actual intent to deceive, and that the lower court's failure to find such intent is erroneous. *Crawford* v.

*Lumbermen's Mutual Casualty Co.*, 126 Vt. 12, 220 A.2d 480 (1966). The evidence is sufficient to find that Mr. Knutsen's statements voided the policy as to him *ab initio*.

## II.

Appellees, however, assert the defenses of estoppel and waiver on the issue of fraudulent misrepresentation. They also urge on us that the appellant did not rely on the admittedly false representations so as to establish materiality. They claim that the appellant was under a duty of conducting an independent investigation and, if it had done so, it would have discovered the true facts relative to John Knutsen's driving record.

■    Appellant argues that the Knutsens are prevented from raising estoppel and waiver by a lack of "perfect good faith" on their part. Mr. Knutsen's fraudulent misrepresentations clearly constitute lack of good faith for the purposes of Vermont law. *Whitmore* v. *Mutual Life Insurance Co.*, 122 Vt. 328, 173 A.2d 584 (1961). However, lack of good faith will not prevent consideration of the issue of waiver. The "good faith" defense is applicable only to the doctrine of estoppel, *Whitmore, supra; Pellon* v. *Connecticut General Life Insurance Co.*, 105 Vt. 508, 168 A. 701 (1933), and not to waiver, whch involves the act or conduct of one of the parties to the contract only. *Farm Bureau Insurance Co.* v. *Houle*, 118 Vt. 154, 102 A.2d 326 (1954).

The lower court did not find there was a duty to investigate on the part of appellant. This contention is based on a line of cases cited by way of dictum in the lower court conclusions. *State Farm Mutual Insurance Co.* v. *Wood*, 483 P.2d 892 (Utah 1971); *Barrera* v. *State Farm Mutual Automobile Insurance Co.*, 456 P.2d 674 (Calif. 1969). Both *Wood* and *Barrera* enunciated a public policy in favor of innocent victims of uninsured motorists, derived from the respective states' financial responsibility laws, requiring the insurance company to conduct a reasonable investigation within a reasonable period after the application is accepted.

The New Jersey courts, faced with equally strong considerations of public policy, have held that while the insurance company could be required to compensate the innocent vic-

tims, the policy was nonetheless voidable as to the insured and he could be compelled to recompense the company. These conflicting determinations underscore the fact that the significant question is not whether an insurance company has a duty to investigate applications, but an underlying question, what is a reasonable burden to place on the insurer to avoid the consequences of operators carrying insurance obtained under false pretenses.

We have elsewhere stated, in reference to life insurance applications, that the applicant by his answers "assume[s] to have knowledge respecting matters such as the insurance company might reasonably suppose to be within his knowledge." *New York Life Insurance Co.* v. *McLaughlin*, 112 Vt. 402, 407, 26 A.2d 108 (1942). As a general rule, one has no duty to investigate another's representation, but may rely on its truth. *Fenwick* v. *Sullivan*, 102 Vt. 28, 145 A. 258 (1929). At any rate, appellant in this case did conduct an investigation. It is our opinion that it was a reasonable investigation within the meaning of the *Wood* and *Barrera* cases.

To support a theory of waiver, the record must demonstrate an intentional relinquishment of a known right on the part of the appellant. *Farm Bureau Insurance Co.* v. *Houle*, 118 Vt. 154, 102 A.2d 326 (1953). Thus, if the insurance company knew, or should have known of the misrepresented facts, and by its conduct evidenced an intent to retain the Knutsens as an insurance risk, it may be held to have waived its right to void the policy.

In an alternative argument, appellees urge that, by virtue of a limited cancellation provision in the policy, the insurance company had no such right after the policy had been in force sixty days. The company argues a distinction between cancellation and avoidance *ab initio* for fraud, which finds some support in the case law. See *Government Employees Insurance Co.* v. *Chavis*, 176 S.E.2d 131 (S.C. 1970). However, the cancellation clause itself provides an exception to the sixty-day limitation where "the insurance was obtained through fraudulent misrepresentation." Such fraudulent misrepresentation involves not only an element of intent to deceive but also a resulting deception. *Fitzgerald* v. *Metropolitan Life Insurance Co.*, 90 Vt. 291, 98 A. 498 (1916).

Finally, appellees also argue that any misrepresentations made by Mr. Knutsen were not material to the risk assumed by appellant because the insurance company discovered or should have discovered the misrepresented facts through its independent investigation, and therefore did not rely on the misrepresentations. It is not denied that the misrepresentations themselves were as to material facts. *New York Life Insurance Co.* v. *McLaughlin,* 112 Vt. 402, 26 A.2d 108 (1942); *Pellon* v. *Connecticut General Life Insurance Co.,* 105 Vt. 508, 509, 168 A. 701 (1933). Innocent material misrepresentations will have the same affect as fraud in rendering the policy voidable. *Pellon* v. *Connecticut General Life Insurance Co., supra.*

Each of these theories is dependent upon whether the appellant knew, or should have known, the true facts in spite of Mr. Knutsen's false representations. Constructive knowledge may be imputed where the company has in its possession such facts as would put a prudent person on further inquiry which would disclose the misrepresented information. *Union Insurance Exch., Inc.* v. *Gaul,* 393 F.2d 151 (7th Cir. 1968); *MFA Mutual Insurance Co.* v. *Meisinger,* 183 Neb. 285, 159 N.W.2d 829 (1968).

In *Gaul,* the insurance company knew that Gaul's insurance had been cancelled in 1961 because of "too many accidents", that it had also been cancelled in 1948, and that Gaul had concealed his 1961 cancellation. The court held that the insurer at that point "could no longer assume, as it was entitled to assume at the outset, that Gaul was honest." 393 F.2d at 154. In *Meisinger,* the insurer was aware of one previous accident and two moving violations and that the previous insurer was known throughout the insurance industry as an insurer of substandard risks. In each case, the information was sufficient to raise a suspicion as to the extent of the risk and to suggest an investigation of the motor vehicle record which would have disclosed the misrepresented facts.

In the present instance, Mr. Wadas, an underwriting supervisor for appellant, testified that he initiated a standard background investigation to confirm the answers on the application. Such an investigation ordinarily produces the applicant's driving record and confirms such matters as mileage to work and the use of the car. In this case, the investigation resulted in

a report by an independent credit agency which was inaccurate in several respects. However, the only apparent discrepancy with the Knutsens' statement was as to the use to be made of the insured automobile, and the insurance company took steps to check on this discrepancy through Mr. Hudson.

An initial failure to request a motor vehicle record is accounted for by the lower court's finding that Mr. Knutsen's Vermont license number and Mrs. Knutsen's New York license number were not included on the original form by Mr. Hudson and were furnished later at the company's request. Mr. Wadas gave his opinion that good underwriting procedure, in light of the Vermont and New York licenses, would have called for an investigation of the New York location. But he also testified that disclosure of Mr. Knutsen's New York motor vehicle record would not have resulted from such an investigation, because the company did not have a New York license number from him.

None of the foregoing information raised the suspicion of an unusual risk. Exhaustion of the routine investigative procedure would not have raised such a suspicion. The key to the true facts lay only in Mr. Knutsen's volunteering of a prior New York license or in a correct, rather than false, response to the critical questions. A more extensive investigation may have led to discovery of the misrepresentations, as it ultimately did subsequent to the accident. However, such an investigation may be postulated only upon a general duty to investigate each routine application beyond the information contained therein; in short, a duty to suspect where no cause for suspicion arises. We do not think that such a duty can be implied from the existing case law. *Union Insurance Exch., Inc.* v. *Gaul*, 393 F.2d 151 (7th Cir. 1968); *MFA Mutual Insurance Co.* v. *Meisinger*, 183 Neb. 285, 159 N.W.2d 829 (1968); *New York Life Insurance Co.* v. *McLaughlin*, 112 Vt. 402, 26 A.2d 108 (1942).

Several other matters, in addition to the independent investigation, were cited by the court below in support of the theory of waiver. A letter sent to the Knutsens by the insurance company on March 10, 1970, reveals only that the matter of coverage was under investigation, that no final determination of coverage had been made, and that the company wished to retain the right to deny coverage until its investi-

gation was completed. A partial return of the premium was a routine matter carried out by appellant's underwriting department, based on the fact that the insured automobile was no longer operable and so insurance was no longer needed. The balance of the premium was never returned as a positive act to void the policy, but the court noted that appellant in its petition requested the court to order a return in the event the court found the policy void.

Taken as a whole, none of these events constitute the intentional relinquishment of a known right as required for waiver. This falls far short of the situation in *Pellon* v. *Connecticut General Life Insurance Co., supra,* where the insurer continued to collect life insurance premiums from the insured fifteen months after it had the facts within its possession upon which to void the policy. The court there said that the insurance company:

> by its conduct led the insured to believe until his death that he held valid and subsisting contracts of insurance. It could not with full knowledge of the facts, . . . treat the policies as in force during the lifetime of the insured for the purpose of collecting premiums, and now after his death treat them as invalid for the purpose of avoiding payment of the loss.

*Id.* 105 Vt. at 523.

Therefore, we hold that Mr. Knutsen's misrepresentations were sufficient to render the policy null and void as to him, and that no action or omission of the company on any theory which appellees have brought to our attention overcomes this result.

### III.

Appellant argues that the policy must also be void as to Mrs. Knutsen on the ground that equity will not allow a wife to benefit from the fraudulent representations of her husband, citing *Fenwick* v. *Sullivan,* 102 Vt. 28, 145 A. 258 (1928). He also contends that Mrs. Knutsen, by her silence in the presence of her husband's representations, made such representations herself, in effect imputing not only her knowledge but also her representation.

Although the lower court found that Mrs. Knutsen was not aware of the facts upon which her husband's representa-

tions were made, which is supported by the record, the appellant contends that her knowledge may be imputed on the basis that where one makes a representation as of his own knowledge when, in fact, he knows nothing, knowledge may be implied, citing *Taylor* v. *Black and Allstate Insurance,* 258 F.Supp. 82 (E.D. Mo. 1966). However, Mrs. Knutsen neither made the representation complained of nor had any knowledge of the falsity of those representations made by her husband. In *Taylor, supra,* knowledge was imputed to the one who actually made the misrepresentations. The facts of *Fenwick* v. *Sullivan, supra,* as well as the cases relied upon therein, are sufficient to lead to the conclusion that the determination of fraud rested not only on the benefit received but also actual knowledge on the part of the one benefited.

In general, an innocent co-insured may take under an insurance policy despite fraud committed by the other co-insured. *Mercantile Tr. Co.* v. *New York Underwriters Co.,* 376 F.2d 502, 24 A.L.R.3d 443 (7th Cir. 1967). In addition, the present policy provides that the insurance afforded "applies separately to each insured against whom claim is made or suit is brought." Therefore, we can find no error in law in the opinion of the lower court in denying the plaintiff's request to declare the policy null and void as to Mrs. Knutsen.

*Judgment reversed. Let a new judgment be entered declaring the insurance policy null and void as to John K. Knutsen and relieving the plaintiff of any obligation to defend any claim against, or pay any judgment rendered against, him arising out of the December 31, 1970 accident; and declaring the insurance policy in full force and effect as to Arlene Knutsen.*

## On Motion To Reargue

**Daley, J.** The appellant, Fireman's Fund Insurance Company, has filed a motion for reargument. It primarily challenges the questions found to have been asked Mrs. Knutsen by the insurance agent. Making this finding was a function of the trial court, and it is supported by the record presented to this Court on appeal. Therefore, appellant's argument as to the misapprehension of *Taylor* v. *Black and Allstate Insurance,* 258 F.Supp. 82 (E.D. Mo. 1966), based upon its interpreta-

tion of the questions asked Mrs. Knutsen by the insurance agent rather than the questions found by the lower court, cannot stand.

The record shows no conscious knowledge on the part of Mrs. Knutsen that her statements were construed or made under the circumstances in which the law would impute fraud. As was noted in the Court's opinion, the policy by its own terms provides "that the insurance afforded 'applies separately to each insured against whom claim is made or suit is brought.' " No law has been presented contrary to the proposition that an innocent co-insured may take under an insurance policy despite fraud committed by the other co-insured in such circumstances. Hence, appellant's arguments as to the misapprehension of *Fenwick* v. *Sullivan*, 102 Vt. 28, 145 A. 258 (1928), the authorities cited in that opinion, and the overlooking of 8 V.S.A. § 4205, cannot stand.

The primary issue before this Court was whether or not the insurance policy should be declared void because of statements in the application. That question was answered in the opinion. The record disclosed no action on the part of Mrs. Knutsen, and no other circumstance, which compelled voiding the policy as to her on equitable grounds. Appellant has raised no overlooked or misapprehended point of law or fact which would now affect that result. V.R.A.P. 40.

*Motion for reargument denied. Let full entry go down.*