# Barbara J. Martell, Administratrix of the Estate of James J. Martell v. Universal Underwriters Life Insurance Co., Foster Motors, Inc. and First Vermont Bank & Trust Co.

[564 A.2d 584]

No. 87-294

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed May 12, 1989

*John F. Evers* of *Langrock Sperry Parker & Wool,* Middlebury, for Plaintiff-Appellant.

*Edward R. Kiel* and *Richard K. Bowen* of *Kiel & Boylan,* Springfield, for Defendant-Appellee.

**Dooley J.** Plaintiff, Barbara Martell, brought this action against defendant, Universal Underwriters Life Insurance Co., claiming that defendant breached its obligations under a credit life insurance policy issued to her spouse who is now deceased. The case went to a jury which found for the defendant. Plaintiff has appealed to this Court alleging various errors in evidentiary rulings and in the charge to the jury. We reverse for a new trial.

Plaintiff's husband, James Martell [the insured], purchased a car on August 27, 1984. In connection with this purchase, the insured bought credit life insurance which was to pay the amount owed on the car in the event of his death. The application for insurance stated in part:

> You are applying for the credit insurance marked above. Your signature below means that you agree, to the best of your knowledge and belief, that:
>
> . . . .
>
> (2) You have not received or been advised to receive medical advice or treatment for . . . any condition of the heart . . . during the six months before the effective date . . . .

The insured signed the application just below this statement. Further down on the application, under a bold, capital-type heading stating "what we won't pay," the application stated:

> *Misstated Health.* If you incorrectly stated that you had not received or been advised to receive medical advice or treatment for . . . any condition of the heart . . . during the 6 months before the effective date, no life insurance will be provided and we will return all life insurance premiums paid.

Eight days later, on September 4, 1984, the insured died due to cardiac arrest. Plaintiff made a claim for the outstanding balance of the car loan under the life insurance policy as administratrix of her husband's estate. Defendant refused to pay the claim after determining that the insured learned shortly before purchasing the insurance that he had a condition suggesting heart disease and that he had been advised to seek treatment or advise due to this condition. The refusal led to this action.

Plaintiff makes six arguments on appeal. Three of the arguments relate to the jury instructions and two involve evidentiary

issues. Since we find an error in the instructions, we do not reach the evidentiary issues. We do, however, find that the trial court was correct on the sixth issue — the dismissal of plaintiff's bad faith and punitive damages claims.

The trial in this case centered on whether the insured answered the medical advice or treatment question correctly. Defendant relied upon the office notes of the insured's doctor which stated that he saw the insured on August 17, 1984 for chest pains. The notes further indicated that he referred the insured to a local internist who was familiar with the care and treatment of patients with coronary disease. At trial, the insured's doctor testified that he told the insured that the pains suggested heart disease and that he should see the internist who treated heart disease patients. He further testified that the insured refused the referral and that he ordered tests to determine the presence of heart disease. The tests came back negative, and the insured was informed of these results.

Plaintiff's contention at trial was that her husband's conduct showed that he was unaware of any heart disease. She emphasized that the application required her husband to answer the health question to the best of his "knowledge and belief."

Plaintiff and defendant presented to the trial court different theories of the nature of the case and the burden of proof. Plaintiff argued that she was entitled to collect on the policy on her husband's death and any questions as to the accuracy of the answers to the application questions must be raised by the affirmative defense of fraud. Defendant argued that it was part of the insured's responsibility to give accurate answers to the application questions as part of his performance of the contract and that plaintiff had the burden to prove the insured's performance before the defendant could be liable. The court accepted the defendant's theory and charged the jury that the plaintiff had the burden of proof on all issues: "[I]t is up to the plaintiff to prove that he did comply with all the terms and provisions of the contract which includes giving a truthful answer." Following the charge, the plaintiff took exception to the court's "failure to instruct that fraud was an affirmative defense and was raised by defendant and as such is their burden to prove it, that burden is clear and convincing evidence."

Under the common law, this Court has generally construed application statements as representations. We stated our rule on

answers to health-related questions on insurance applications in *New York Life Ins. Co. v. McLaughlin,* 112 Vt. 402, 407, 26 A.2d 108, 111 (1942):

> [I]f the statement is a mere representation, its falsity will not avoid the policies unless the matter stated is material to the risk; but insurance procured by means of representations which are intentionally fraudulent, and are in fact relied upon, is voidable, even though the statements relate to matters not so material.

Vermont's law is now codified in 8 V.S.A. § 3736,[1] which provides:

> All statements and descriptions in any application for a life insurance policy or annuity contract, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. *Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:*
>
> (1) Fraudulent; or
> (2) Material either to the acceptance of the risk, or to the hazard assumed by the insured; or
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

(emphasis added). The statute adds to the common law in this area in two respects: first, it codifies our preference for catego-

---

[1] The applicability of the statute was not raised by either party in the trial court. The statute covers all statements "in any application for a life insurance policy." *Id.* Life insurance is defined in 8 V.S.A. § 3301(a)(1) as "insurance on human lives." Credit life insurance is a subcategory of life insurance defined as "insurance on the life of a debtor pursuant to or in connection with a specific loan or other credit transaction." 8 V.S.A. § 4103(1). While the Legislature has provided specific regulatory requirements for credit life insurance in view of its special purpose, the general regulatory statutes, like 8 V.S.A. § 3736, apply by their terms to credit life insurance.

rizing answers to health-related questions as representations so that all such statements shall be considered as representations; and second, the statute adds a definition of materiality applicable in many cases.

The applicable statute is both helpful and harmful to each side in this case. Under § 3736, the health statement made by the insured was a representation. As a representation, the statement cannot be viewed as an essential part of plaintiff's performance that is a precondition to performance by defendant. Instead, an untruthful representation or misrepresentation gives rise to a defense for the insurer. Thus, the statute helps plaintiff (and hurts defendant) in her argument that defendant had the burden of proof on misrepresentation.

The nature of the burden imposed on the insurer-defendant depends upon whether the misrepresentation was material. The statute contains a broad definition of materiality to include any statement that would affect the insurer's decision to issue the policy, the premium charged, the amount of coverage or the risk assumed. These indicia of materiality are consistent with the common law. See *New York Life,* 112 Vt. at 407, 26 A.2d at 111 (quoting *Mascott* v. *First Nat'l Fire Ins. Co.,* 69 Vt. 116, 125, 37 A. 255, 257 (1896), that a representation is material if it would "materially influence the insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance"). Materiality establishes the nexus between the misrepresentation and the insurer's decision to issue the policy. See *McAllister* v. *AVEMCO Ins. Co.,* 148 Vt. 110, 112, 528 A.2d 758, 759 (1987).

The policy in this case shows that the health statement was material as a matter of law. If the insured did indeed have heart disease, the hazard assumed by the defendant was greater. See *Friedman* v. *Prudential Life Ins. Co. of America,* 589 F. Supp. 1017, 1026 (S.D.N.Y. 1984) (New York law; heart condition); *Shapiro* v. *American Home Assurance Co.,* 584 F. Supp. 1245, 1249 (D. Mass. 1984) (Massachusetts law; cancer); *Process Plants Corp.* v. *Beneficial Nat'l Life Ins. Co.,* 53 A.D.2d 214, 385 N.Y.S.2d 308, 310 (1976) (heart condition). The policy showed that defendant was specifically concerned about this kind of increase in its risk. It stated that a misstatement of health under the application section means that "no life insurance will be provided and we will return all life insurance premiums paid." Thus,

we conclude that defendant would not have issued the policy if plaintiff's decedent "had . . . received or been advised to receive medical advice or treatment for . . . any condition of the heart . . . during the 6 months before the effective date" of the policy. See 8 V.S.A. § 3736(3).

Once the representation is shown to be material, the insured's intent is no longer relevant. Under 8 V.S.A. § 3736, an innocent, material representation will prevent recovery under the policy. See also *McAllister* v. *AVEMCO Ins. Co.,* 148 Vt. at 112, 528 A.2d at 759. Thus, the question before the court in this case was whether plaintiff's decedent made a misrepresentation; fraud was not part of the case. On this point, the law is consistent with defendant's theory of the case rather than plaintiff's theory.

■ With this background in mind, we can address the specific points of error raised by the plaintiff. She argues that the trial court erred by charging the jury that plaintiff had the burden to show that her husband made a truthful representation when the burden was actually on defendant to show fraud by "clear and convincing evidence." We agree with plaintiff that defendant had the burden to plead and prove the defense of misrepresentation. See 21A J. Appleman, Insurance Law & Practice § 12428, at 229 (1980); *Guiltinan* v. *Metropolitan Life Ins. Co.,* 69 Vt. 469, 477, 38 A. 315, 317-18 (1897) ("[I]t was the duty of the [insurer] to point out in evidence which of the numerous answers it should contest, and the burden was upon it to establish their untruthfulness."). It is clear from the above discussion, however, that defendant did not have a burden to prove fraud. Thus, the "clear and convincing evidence" standard applicable in fraud cases, see *Poulin* v. *Ford Motor Co.,* 147 Vt. 120, 125, 513 A.2d 1168, 1172 (1986), is inapplicable. The standard of proof for the defense of innocent material misrepresentation is only preponderance of the evidence. *Hughes* v. *Holt,* 140 Vt. 38, 41, 435 A.2d 687, 689 (1981).

The charge to the jury was inconsistent with the law on misrepresentations in insurance applications. By placing the burden of proof on the plaintiff, the trial judge committed error that substantially prejudiced plaintiff's case. If the error was properly preserved and the plaintiff put on sufficient evidence to get to the jury, the case must be reversed on this ground.

■ In order to preserve the charge issue, plaintiff had to comply with V.R.C.P. 51(b) by objecting to the charge "before the

jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The purpose of this requirement is to allow the trial judge to hear the objection and correct the charge before the jury retires. *Grazulis* v. *Curtis,* 149 Vt. 371, 372, 543 A.2d 1324, 1325 (1988). In this case, plaintiff excepted to the erroneous part of the charge both because it improperly assigned the burden of proof and because it allowed the jury to use an improper standard of proof. The latter point was secondary, however, because it would arise only if the court changed its position on the burden of proof. The charge followed a charge conference where the court heard argument on the burden of proof issue and clearly decided to reject plaintiff's position. In light of this conference. we believe that the exception complied with V.R.C.P. 51(b). See 9 C. Wright & A. Miller, Federal Practice & Procedure § 2554, at 648 (1971) ("No particular formality is required so long as it is clear that the trial judge was informed of possible errors and was given an opportunity to correct them."). The charge error in this case was preserved.

Although there was error in the charge, defendant argues that the error was harmless because the court should have granted its motion for a directed verdict. Essentially, defendant's argument is that the evidence showed that the insured misrepresented his health condition as a matter of law. We believe that the jury could find from the evidence that no misrepresentation occurred. See, e.g., *Cummings* v. *Connecticut Gen'l Life Ins. Co.,* 101 Vt. 73, 85-86, 142 A. 82, 89 (1928). The testimony was that the insured's doctor recommended to the insured that he see a particular internist in the area to determine whether his pains were the result of heart disease. When the insured objected to seeing the internist recommended, apparently because of past experience with that particular doctor, the insured's doctor had specific tests done on the insured at the local hospital. These tests included an EKG and a chest x-ray to determine whether heart disease was present. These tests came back negative, and the results were transmitted to the insured. The jury could have concluded from these facts that the insured never received, and never was advised to receive, medical advice or treatment for heart disease. This conclusion could be based on a finding that the doctor's intent was to exclude a diagnosis based on heart disease and he did exclude that diagnosis by the testing. The testing cannot be characterized as either medical advice or treatment. Because there was

enough evidence to submit the case to the jury, we must reverse the defendant's verdict based on the error in the jury instruction.

Although we reverse and remand for a new trial, we must consider plaintiff's argument that the trial court erred in dismissing her bad faith and punitive damages claim. In making this claim, plaintiff relied on our cases dealing with bad faith refusal to settle liability claims. See *Myers* v. *Ambassador Ins. Co.*, 146 Vt. 552, 508 A.2d 689 (1986). This line of cases is based, however, on "the insurance company's control of the settlement of a claim brought against the insured" and the necessary conflict of interest that it creates. *Id.* at 555, 508 A.2d at 690. In this case, we are dealing with a first-party claim between insurer and beneficiary where a similar conflict of interest does not exist.

Some courts have found liability for bad faith failure to pay claims in cases such as this while others have refused to recognize such a doctrine. See cases collected in *Travelers Ins. Co.* v. *Savio*, 706 P.2d 1258, 1273 n.19 (Colo. 1985). The United States District Court for the District of Vermont has predicted that we would find such a cause of action in an appropriate case. *Phillips* v. *Aetna Life Ins. Co.*, 473 F. Supp. 984, 990 (D. Vt. 1979).

This is not a good case for us to decide whether to accept such a cause of action.[2] Those courts that have recognized the action have required more than negligence on the part of the insurer, often requiring willful or reckless conduct. See *id.*; *Washington* v. *Group Hospitalization, Inc.*, 585 F. Supp. 517, 520 (D.D.C. 1984); *Trimper* v. *Nationwide Ins. Co.*, 540 F. Supp. 1188, 1194 (D.S.C. 1982); *Noble* v. *National Amer. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981); *Anderson* v. *Continental Ins. Co.*, 85 Wis. 2d 675, 693, 271 N.W.2d 368, 376 (1978). The standards of care developed for third-party claims are generally inapplicable where there is no conflict of interest. See *Fidelity & Deposit Co.* v. *Wu*, 150 Vt. 225, 230, 552 A.2d 1196, 1199 (1988).

In this case, the sole claim of bad faith is that the defendant relied upon the office notes of the insured's doctor without doing a more extensive inquiry on what the insured believed about his health condition. The notes provided:

---

[2] The punitive damages claim could be supported by a finding that defendant's breach was so "willful and wanton or fraudulent" as to allow such an award under the general principles set forth in *Hilder* v. *St. Peter*, 144 Vt. 150, 163, 478 A.2d 202, 210 (1984). As noted in the text, however, the evidence doesn't support such a finding.

8/17/84 gets pain under lower sternum at times when he starts to eat and has to wait a minute or so for relief and then continues to eat. pain goes down into both forearms at times — substantial pain [] 2— 3 mins. duration Had 5 attacks this morning . . . Suggest he see Dr Henderson because symptoms Suggest heart disease — He didn't agree to suggestion

(style uncorrected). Based upon this and other information provided by the insured's doctor, the defendant decided to deny the claim and return the premium to plaintiff. The application question in this case asked whether the insured had received or had been advised to receive medical advice or treatment for any condition of the heart during the six months prior to the application.

We agree with the trial judge that these facts do not make out reckless or willful conduct. The bad faith claim, with its attendant request for punitive damages, was properly dismissed.

*Reversed and remanded for a new trial.*