Northern Security Insurance v. Perron, No. 314-6-96 (Toor, J., Sept. 9, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS

| | |
|---|---|
| NORTHERN SECURTY INSURANCE COMPANY INC.,<br> Plaintiff<br><br>  v.<br><br>ROSE PERRON, et al., | SUPERIOR COURT<br>Docket No. 314-6-96 Wncv |

RULING ON MOTION FOR SUMMARY JUDGMENT

This is a case involving insurance coverage for acts occurring at the home of Rose and Steven Perron, who had a homeowner's liability policy through plaintiff Northern Security Insurance Company ("NSI"). There was an earlier motion for summary judgment which was granted, and which was affirmed in part and reversed in part by the Vermont Supreme Court. Plaintiff NSI has now moved for summary judgment on a different ground. The issue is whether the entire insurance policy should be held void as a result of an alleged misrepresentation by Rose Perron at the time she obtained the coverage.

Findings of Fact

NSI has submitted, as required by Rule 56 of the Rules of Civil Procedure, a statement of allegedly undisputed facts. Defendants Susan Stanhope, Jesse Durenleau, Helene Parah and

Augustine Parah, Jr. ("Defendants") have submitted a "statement of disputed facts" but have failed to respond point-by-point to NSI's statement. The only facts set forth by NSI which the defendants directly challenge are paragraph 16, which has to do with whether Rose Perron made a misrepresentation, and paragraph 18, which states that the policy would not have been issued had the misrepresentation not been made. *See* Defendant's Statement of Disputed Facts, ¶ ¶ 1-3. Thus, all other facts in NSI's statement are deemed established. V.R.C.P. 56(c)(2).

The policy at issue in this case is a homeowner's policy issued to Steven and Rose Perron by NSI effective June 13, 1991. In this case, the Defendants are parties whose children were allegedly sexually and physically assaulted by the Perrons' son, and who are seeking payment from the insurance company under the Perrons' homeowner's policy. The application for the policy, which is not signed by the Perrons, has a question on the form that reads: "Are business pursuits conducted on the premises?" The answer to that question is a typed "no." In fact, before, after and at the time of the application for the policy, Rose Perron ran a daycare operation in the home.

NSI has supported its statement of undisputed fats with affidavits of Joyce (now Bordo) Soule, the Hickok and Boardman insurance agent with whom Rose Perron spoke to obtain the policy. Ms. Soule states that "it was my practice never to record information unless I obtained that information from the applicant." Affidavit of Joyce Bordo Soule, ¶ 4 (October 28, 1997). She further states that she "would not have typed the word 'no' in the box following the question 'Are business pursuits conducted on the premises?' unless either Steven Perron or Rose Perron told me that business pursuits were not conducted on the premises." Id., ¶ 7. Despite her reference to Steven Perron, neither side in this case suggests that anyone other than Rose Perron ever spoke to or provided information to Ms. Soule.

Nothing in Defendants' "statement of disputed facts" contradicts the sworn statement of Ms. Soule. No affidavit has been submitted from Rose Perron denying that she told Ms. Soule there was no business occurring at the home. All that is submitted is Ms. Perron's deposition, in which she states that in the process of applying for the insurance, she was not asked any questions by Ms. Soule (then Bordo). Deposition of Rose M. Perron, p. 29 (January 8, 1997). The issue is not whether she was asked questions; the issue is whether she told Ms. Soule that there was no business taking place in the home. She could have made such a statement without being asked any questions.[1] Nothing in the Perron deposition, therefore, contradicts the affidavit of Ms. Soule. The court thus finds it undisputed that Ms. Soule obtained the information in question from Rose Perron.

Defendants claim that it is unclear whether the application was relied upon for the issuance of the policy. The documents submitted fail to place that issue in question. The application is dated June 10, 1991. The policy declarations page shows that the policy was effective as of June 13, 1991. The request for additional information, apparently submitted on June 24, July 29 and August 21, merely asks for a photograph of the home and says "or delete superior home." While no affidavit is provided to explain this, on its face this merely shows that the policy was in force and had been issued with a "superior home" discount (as noted on the declarations page), and that if the photo documenting that was not submitted the discount would be eliminated. This fails to support the defendants' claim that the application may have been incomplete prior to August, and that thus the policy may have been issued without any reliance upon the application.

---

[1] It is also inherently lacking in credibility, as it would have been impossible for Ms. Soule to obtain insurance for the Perrons without obtaining basic information such as name, address, phone number, and so on. It is highly unlikely that she did not solicit some of this, rather than Ms. Perron volunteering all of it. However, credibility issues are not for summary judgment motions and the court therefore sets this issue aside.

If Defendants had deposed Ms. Soule or representatives of NSI and had obtained admissions that applications are not always reviewed in advance of policy issuance, or that they are not relied upon at all in issuing policies, or some such evidence, then there might be a disputed fact here. In the absence of any such evidence, there is no evidence putting this issue in dispute. The affidavit of Robert Fulton submitted by NSI states that if the application had stated "that business pursuits were conducted on the premises, [NSI] would not have issued a Homeowners policy to the Perrons." Affidavit of Robert D. Fulton, ¶ 6 (Nov. 3, 1997). It is implicit in this statement that NSI did rely upon the application in issuing the policy.

It is undisputed that the Perrons were in fact running a daycare in their home both before, after, and at the time they applied for the insurance in question.

Thus, the court finds it established for purposes of this motion that (1) the statement that no business was conducted in the home could only have been provided by Rose Perron, and (2) that statement was false (whether intentionally or innocently),[2] and (3) NSI relied upon that statement in issuing the policy and would not have issued it if Ms. Perron had been accurate.

<u>Conclusions of Law</u>

NSI argues that because Ms. Perron misrepresented whether the Perrons were conducting a business in their home, the homeowners policy should be voided in its entirety. They rely for this proposition upon a statute which reads as follows:

> The falsity of a statement in the application for a policy covered by such provisions shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by insurer.

___

[2] The court makes no finding as to whether the false statement in this case was intentional or an innocent misstatement.

4

8 V.S.A. § 4205. NSI is correct that the Vermont Supreme Court has interpreted this statute to mean that if the "materially affected" criterion has been met, grounds exist for voiding the policy in its entirety. McAllister v. AVEMCO Insurance Co., 148 Vt. 110, 112 (1987). Nor does it matter whether the misrepresentation was innocent as opposed to intentional, or whether it was "causally related to the loss that occurred." Id. at 111, 112.

Because the policy in question would not have been issued if the misrepresentation had not been made, McAllister supports a conclusion that the policy should be declared void. Defendants argue, however, that a later case leads to a different conclusion. Northern Security Insurance v. Hatch, 165 Vt. 383 (1996). Although that case did analyze the exact language that is in the policy here with regard to when claims will be denied for fraud, and found the language insufficient, it is not on point. As the Hatch court noted, the question before it was "whether the insured's *fraudulent presentation of a claim* on a homeowner's policy voids the entire policy so as to preclude coverage for a later unrelated claim of an innocent third party." Id. at 384 (emphasis added). The issue here is not a fraudulent claim. The issue here is fraud in the application for the policy, and the source for voiding the policy is not the policy language but the statute.

Defendants also argue that courts in other states have concluded that third parties such as themselves who claim under a policy obtained by misrepresentation should not be barred from recovery under the policy, and urges this court to follow that doctrine. The court does not find the cases to be on point. One involved state-mandated automobile insurance policies, and turned on policy considerations not applicable here. Harkrider v. Posey, 24 P. 3d 821, 828 (Ok. 2001)(referring to liability for protection "mandated by Oklahoma's compulsory insurance law"). Another related to a bounced check for payment  on the policy, not a misrepresentation in

the application process. <u>Katinsky v. Auto Club Insurance Association</u>, 505 N.W.2d 895 (Mich. Ct. App. 1993)(noting that insurers could easily protect themselves by requiring payment before issuing policies). The others turned not on the issue of whether fraud in the inception justifies voiding of the contract to protect third parties, but on the issue of innocent owners, a topic the court will separately address next. <u>First American Title Insurance Co. v. Lawson</u>, 827 A.2d 230 (N.J. 2003); <u>Mercantile Trust Co. v. New York Underwriters Insurance Co.</u>, 376 F.2d 502 (7th Cir. 1967).

Defendants argue that even if the policy is void as to Rose Perron, her husband would be an innocent co-owner of the policy and should be covered.[3] Neither side in this case suggests that Steven Perron had any contact with Ms. Soule, and thus although Ms. Soule in her affidavit suggested it could have been either of the Perrons who was the source of the misrepresentation, it is undisputed that all the information came from Rose Perron. Nor is there any evidence presented to the court that Steven Perron had any knowledge of the misrepresentation by his wife.

Defendants cite several cases for the proposition that innocent co-insureds are afforded coverage. The court finds controlling <u>Fireman's Fund Insurance Co. v. Knutsen</u>, 132 Vt. 383 (1974). In that case, the parties applied for automobile liability insurance, and both answered questions regarding their driving records. The husband was later involved in an accident for which a claim was made under the policy. The court found that the husband had intentionally lied as to his driving record, but the wife had been truthful. Applying 8 V.S.A. § 4205, the court

---

[3] Defendants also argue that the parties' minor son, Kyle, is an innocent co-insured. The policy application lists Steven and Rose as the co-insureds. Whether their minor son is "an insured" is not an issue that has been briefed, and the court therefore does not reach it. However, to the extent that Kyle is a co-insured, the court's conclusions as to Steven would also be applicable to Kyle. There is no evidence that he was aware of his mother's misrepresentation to NSI, and the court takes it as undisputed that Kyle was aware of the daycare going on in the home.

found the policy void as to the husband based upon that intentional deception. However, finding that although she was aware of the answers her husband gave, the wife did not know they were false, the court held that she remained covered by the policy. The court held: "In general, an innocent co-insured may take under an insurance policy despite fraud committed by the other co-insured." 132 Vt. at 396.

NSI attempts to distinguish <u>Knutsen</u> by arguing that Steven obviously knew there was a daycare being operated in the home, and therefore cannot be considered to have been ignorant of the facts as was the wife in <u>Knutsen</u>. While true as far as it goes, knowing the daycare existed is not the same as knowing the insurance issuer was told no business was taking place in the home. In <u>Knutsen</u> the wife knew of the statements her husband made, but did not know the true facts. Here the husband knew of the true facts, but did not know of the statements his wife had made. In each case, the spouse had no hand in the misrepresentation. The principle is the same in each case. Thus, Steven is entitled to the benefits of the "innocent co-insured" doctrine.

<u>Order</u>

The motion for summary judgment is granted in part and denied in part. The court grants it as to Rose Perron and declares the NSI policy void as to her. The court denies the motion as to Steven and holds that the policy is valid as to him.[4]

Dated at Burlington this 9th day of September, 2005.

_____
Helen M. Toor
Superior Court Judge

---

[4] As noted above, if Kyle is an insured, the court's ruling here would also make the policy valid as to him.